## UNITED STATES v. SIEGEL.

(District Court, D. Minnesota, Fourth Division. December 1, 1926.)

**1. Criminal law ⬤⟹361(1)—To negative defense of entrapment, government may show source of information warranting suspicion that defendant was violating the law.**

To negative defense of entrapment, the government may introduce the testimony of its officers as to the foundation of their belief or suspicion that defendant was engaged in the business of violating the law.

**2. Criminal law ⬤⟹361(1)—Statements by addicts of purchase of morphine from defendant may be shown to justify entrapment by officers.**

In a prosecution for illegal sale of morphine, it was shown that government officers procured an addict to purchase morphine from defendant, furnishing him the money for the purpose. At the close of the government's evidence, defendant moved for a directed verdict on the ground of entrapment. *Held*, that the prosecution was then properly permitted to reopen its case and introduce testimony of the officers that they had previously been told by other addicts of the purchase of morphine from defendant; the jury being instructed to consider such testimony only on the question of the good faith of the officers.

Criminal prosecution by the United States against Bennie Siegel. On motion by defendant for new trial. Denied.

William A. Anderson, Asst. U. S. Atty., of Minneapolis, Minn.

Ernest S. Cary, of Minneapolis, Minn., for defendant.

JOHN B. SANBORN, District Judge. Bennie Siegel was tried and convicted of a violation of the Harrison Anti-Narcotic Act

(Comp. St. §§ 6287g–6287q) in October, 1926. The evidence of the government showed that on the 10th day of April, 1926, he sold to an addict by the name of Lang an ounce of morphine, and received $55; that Lang received the $55 from government officers of the Narcotic Department; that two of them accompanied him to the pool room where the purchase was made; that two others saw Siegel come out of this place and approach a man by the name of Kurtz, from whom he apparently procured the can of morphine. The government's testimony indicated no persuasion or inducement of Siegel to make this sale, and, from all that appears in the government's case, it was the ordinary sale of morphine by a peddler to an addict.

When the government rested, the defendant for the first time made any suggestion that he claimed to have been entrapped. His counsel moved for a directed verdict on that ground, and said:

"At this time, if the court please, the defendant moves for a directed verdict, on the ground that the government has wholly failed to prove that the defendant was a dealer within the law; second, that the government has wholly failed to prove that there was any suspicion or right of suspicion on the part of the agents when they had the arrangement with the witness Lang to purchase narcotics from the defendant Siegel, and, further, on the ground that the evidence before the court clearly shows an entrapment."

The court denied the motion for a directed verdict. The defendant rested. The government then asked permission to reopen its case "for the purpose of introducing testimony relative to the question raised by the defendant of entrapment." Permission was granted over the defendant's objection. The government officers were then permitted to testify, over the defendant's objection, as to statements made by other addicts, prior to the time when the offense was committed, as to having purchased drugs from Siegel, and as to a previous attempt made by the officers to get evidence of a sale by Siegel.

After this evidence was in, the defendant requested the court to delay the trial until he could procure the addicts referred to by the government agents, who were then in the penitentiary at Leavenworth, Kan., so that he might examine them as to their having made such statements to the officers. The court refused to strike out the testimony and refused to delay the trial. Siegel then went upon the stand, claimed that on the 10th day of April Lang told him that he was "awful sick" and wanted morphine; that he (Siegel) told him

that he was not in the business, but that, if he happened to run into anybody who was selling it, he would send him to Lang; that he accidently ran into Harry Kurtz; that Kurtz told him that he might be able to get it for him; that he (Siegel) then got $55 from Lang, went out and gave it to Kurtz; and that Kurtz was to deliver the can of morphine to Lang in an alley behind the building next door to the pool hall.

[1] The defendant now claims that the evidence given by the agents as the foundation for their belief or suspicion that Siegel was selling drugs was inadmissible, and that its admission constituted error. This presents an interesting and a very doubtful question. The evidence was, of course, incompetent as proof of the guilt of the defendant. With reference to this evidence, the court charged the jury as follows:

"The government has introduced evidence tending to prove that before April 10, 1926, information had come to the officers of the Narcotic Department that Siegel had sold narcotics. That evidence cannot be considered by you, except in one connection, and that is whether these officers on April 10th were acting in good faith, in an honest attempt to capture a man whom they had good grounds to believe was violating the law. That evidence is not proof that Siegel had before sold morphine, or that he was ever engaged in the business. It tends to prove merely the good faith of the government agents."

The question, then, is whether the government, in order to negative the charge of entrapment, may introduce the testimony of its officers as to the foundation for their belief or suspicion that the defendant was engaged in the business of violating the law by selling narcotics.

[2] Counsel for the defendant, in his motion for a directed verdict, relied largely on the case of Butts v. United States, 273 F. 35, 18 A. L. R. 143, decided by the Circuit Court of Appeals of the Eighth Circuit. There the question involved was whether the trial court erred in not submitting the question of entrapment to the jury. The court in its decision said that the evidence in that case conclusively proved that the defendant was not, and never had been, engaged in dealing in morphine, and that the intention to do the acts which the defendant did originated in the minds of the officers. It then said: "It is not denied that, in cases where the criminal intent originates in the mind of the defendant, the fact that the officers of the government used decoys or truthful statements to furnish opportunity for or to aid the ac-

cused in the commission of a crime, in order successfully to prosecute him therefor, constitutes no defense to such a prosecution"— citing Price v. United States, 165 U. S. 311, 17 S. Ct. 366, 41 L. Ed. 727; Grimm v. United States, 156 U. S. 604, 15 S. Ct. 470, 39 L. Ed. 550; Goode v. United States, 159 U. S. 663, 16 S. Ct. 136, 40 L. Ed. 297; Andrews v. United States, 162 U. S. 420, 16 S. Ct. 798, 40 L. Ed. 1023; Fiunkin v. United States (C. C. A.) 265 F. 1.

The Supreme Court of the United States has apparently never become unduly excited about the defense of entrapment. In Grimm v. United States, supra, the court said: "The official, suspecting that the defendant was engaged in a business offensive to good morals, sought information directly from him, and the defendant, responding thereto, violated a law of the United States by using the mails to convey such information, and he cannot plead in defense that he would not have violated the law, if inquiry had not been made of him by such government official."

Goode v. United States, supra, involved the stealing of a letter from the mails. The court said: "That the fact that the letter was a decoy is no defense is too well settled by the modern authorities to be now open to contention." To the same effect are Rosen v. United States, 161 U. S. 29, 16 S. Ct. 434, 480, 40 L. Ed. 606, and Andrews v. United States, supra. In the decision in the latter case, the following appears:

"Error is attributed to the court below in permitting the witness Flint to testify in the case, for the reason that he was an officer of the United States, and that correspondence was carried on, through the mails, for the sole purpose of obtaining evidence from the defendant upon which to base the prosecution. A similar contention was disposed of by this court in the case of Grimm v. United States, 156 U. S. 604 [15 S. Ct. 470, 39 L. Ed. 550], where it was said: 'It does not appear that it was the purpose of the post office inspector to induce or solicit the commission of a crime, but it was to ascertain whether the defendant was engaged in an unlawful business. The mere facts that the letters were written under an assumed name, and that the writer was a government official—a detective, he may be called—do not of themselves constitute a defense to the crime actually committed."

In the case of C. M. Spring Drug Co. v. United States (C. C. A.) 12 F. (2d) 852, the court states the rule as follows: "It is well settled by the decisions of the Supreme Court of the United States, we think now univer-

sally followed in the several circuits, that where the government, through its agents, has reasonable cause to believe that the law is being violated by the defendant, they may legally entrap the defendant by decoy letters or by pretended purchases." The United States decisions are then cited, and the case of Fiunkin v. United States (C. C. A.) 265 F. 1. The court then, in its majority opinion, holds that the testimony of an officer that the volume of sales made by the defendant caused him to make the investigation was incompetent and of such a serious nature that even the direction of the court to the jury to disregard it would not cure the error of admitting it.

The majority opinion, however, does not discuss the question as to whether it was competent to show reasonable grounds of suspicion on the part of the officers as negativing the idea of entrapment. But Judge Stone, in his dissenting opinion, does. He says: "The sole purpose of the question, which elicited the testimony stricken out, was to show what had led the agents to believe the law was being violated and had caused them to make this investigation. * * * I rather incline to the opinion that, with the issue of entrapment clearly in the case at the time, the evidence was admissible for the only purpose for which it was offered, to wit, to show reasonable cause to believe unlawful acts."

In the present case, at the close of the government's testimony, it was first claimed by the defendant that he had been lured or induced by government officers to commit this crime. He then claimed that it was the duty of the government to prove that they had reasonable grounds to suspect him of having committed unlawful acts, in order to be entitled to a conviction. Under the rule as stated in the case of Spring Drug Co. v. United States, supra, it would certainly be necessary, when the issue of entrapment was raised, for the government to show what grounds its officers had for believing that the accused was engaged in the unlawful business, in order to negative the idea that the accused was unlawfully entrapped. The true rule would seem to be this: That the government, prior to the question of entrapment having been raised, could not introduce any evidence of complaints having been made to the officers, but that, when the issue of entrapment was raised, then it could show what grounds of suspicion they had. It could not be claimed that information received from a drug addict as to the source of his supply would not justify a government officer engaged in the business of apprehending illicit drug dealers from

making an investigation to ascertain whether such person was in fact selling drugs unlawfully. If, in the course of such investigation, he used an addict to assist him, which is practically the only way in which it would be possible for him to find out, and if the addict made a buy from the person suspected, there could be no unlawful entrapment.

It is commonly known that, in the illicit drug trade, the retail dealers' business is selling to addicts, that the business is carried on with the utmost secrecy, and that the sales are made only to those who are known to be victims of the drug habit. If hearsay testimony is not a sufficient basis for a reasonable belief on the part of the officers charged with the enforcement of the Narcotic Act, it will be seldom, if ever, that they can use a decoy, without such use constituting an unlawful entrapment. Furthermore, in this case, it seems to me that the defendant actually invited the introduction of this evidence by the motion which he made for a directed verdict at the close of the testimony. He pointed out that the government had failed to show that the agents had any right to suspicion the defendant prior to using Lang to make this buy. The government accepted his challenge and proved what reasons the agents had to suspicion him. Under the circumstances, he is in no position to complain.