### MITCHELL v. UNITED STATES.

### No. 2845.

Circuit Court of Appeals, Tenth Circuit.

July 13, 1944.

Rehearing Denied Aug. 14, 1944.

Harry Seaton, of Tulsa, Okl. (John M. Goldesberry, of Tulsa, Okl., on the brief), for appellant.

Wm. Knight Powers, Asst. U. S. Atty., of Tulsa, Okl. (Whit Y. Mauzy, U. S. Atty., of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Appellant, Woodard R. Mitchell, was indicted, tried and convicted of violating the United States Anti-Narcotic Revenue laws. The indictment contained thirteen counts. Counts 1 to 11, inclusive, charged violations of 26 U.S.C.A. Int.Rev.Code, § 2554; Counts 12 and 13 charged violations of 18 U.S.C.A. § 80. Counts 5, 6 and 12 were taken from the jury. Appellant was found guilty on all the remaining counts.

Complaint is made, first, that the court erred in refusing to sustain appellant's demurrers to the indictment and his motion in arrest of judgment, all of which challenged the sufficiency of the indictment; second, that the court erred in refusing appellant's motion for a continuance; third, that the evidence was insufficient in law to sustain a verdict of guilty; and, fourth, that appellant was erroneously deprived of the defense of entrapment as to Counts 1 and 2.

The objections to Counts 1 to 11 are that they failed to state facts sufficient to constitute an offense against the laws of the United States, and that the language is so vague, indefinite and uncertain that it fails to inform appellant of the charge levied against him with sufficient particularity to enable him to prepare his defense.

26 U.S.C.A. Int.Rev.Code, § 2554 in part provides that: "It shall be unlawful for any person to sell, barter, exchange, or give away any of the drugs mentioned in section 2550(a)[1] except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary."

Under exceptions 1 and 2 the prohibition does not apply to the dispensation or distribution of such drugs to a patient by a physician, dentist or veterinary surgeon registered under Sec. 3221 of the Act, in the course of his professional practice only, provided that a record of all such drugs dispensed under the exception be maintained, or other dispensation of drugs to patients by prescription, provided that the record of such prescriptions be kept for two years.

Count 1 charges that Woodard R. Mitchell "at the City of Shidler, Osage County, State of Oklahoma, Northern District of Oklahoma and within the jurisdiction of this court, did, on or about the 14th day of June A. D. 1943, wrongfully, unlawfully, fraudulently and feloniously and with intent to defraud the United States of America, and in violation of an Act of Congress commonly known and designated as the Harrison Anti-Narcotic Act, as amended, sell, barter, exchange and furnish to one William Schaefer approximately Fifty Grains of Morphine, * * * which said sale, barter, exchange and furnishing of said morphine was not in pursuance of a written order of the said William Schaefer on a form issued in blank for that purpose by the Commissioner of Internal Revenue, and which said sale, barter, exchange and furnishing of said morphine was not then and there in the course of the professional practice of the said defendant, Woodard R. Mitchell, and was not then and there within any of the exceptions or exemptions provided for in said Act, * * *"

The remainder of the first eleven counts charged the offenses therein alleged in substantially the same language.

The purpose of the indictment is to inform the accused of the offense with which he is charged. This it must do with sufficient clarity to enable him to adequately prepare his defense and to enable him to plead the judgment, if any, in bar of further prosecutions.[2] The count specifically charged that on or about June 14, 1943, at Shidler, Osage County, Oklahoma, appellant Woodard R. Mitchell, unlawfully, etc., and in violation of the Act, sold William Schaefer approximately fifty grains of morphine and not in pursuance of a written order of William Schaefer on a form issued for that purpose by the Commissioner of Internal Revenue. It is urged in support of the charge of vagueness that it cannot be told whether appellant was being prosecuted as a dealer in the commercial sale of narcotics, for selling without having obtained an order, or whether he was being prosecuted as a physician, chemist, druggist or as one engaged in a profession. This contention is without merit. The Act applies to every one who disposes of these drugs. It is an offense for any one to dispense them except in pursuance of a written order on an official form. The only exceptions are that a registered physician, dentist or veterinary surgeon may dispense such drugs without a written order, but then only when it is done in the course of his professional practice or pursuant to a written prescription of such physician, dentist or veterinary surgeon. The indictment states that the drugs were not dispensed to Schaefer within any of the exceptions or exemptions provided for in the Act. This was certainly sufficient to inform appellant that he was charged with dispensing these drugs in violation of the act in that he did

---

[1] It is conceded that the drugs which appellant is charged with having sold unlawfully are drugs mentioned in Sec. 2550.

[2] United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619; Graham v. United States, 10 Cir., 120 F.2d 543.

not have the required order and that he did not dispense them either in the course of his professional practice only, nor pursuant to a prescription. Sec. 2554 does not apply alone to those who are required to register under Sec. 2553, but to every one.[3] It applies to physicians, dentists and veterinary surgeons except when they bring themselves within the specific exemptions.

Count 13 charged an offense under that portion of 18 U.S.C.A. § 80 which makes it an offense to make false or fraudulent statements or make use of a false statement or deposition or a fictitious statement or entry in any matter within the jurisdiction of any department or agency of the United States, etc. Count 13 in substance alleged that appellant at the town of Shidler, Osage County, Oklahoma, on or about the 2d day of August, 1943, did falsely, etc., make and cause to be made a certain false and fictitious roll, record, account and certificate, to-wit, a narcotic dispensing record required to be kept under the United States narcotic law, said record being false and fictitious in that he failed and omitted to show the dispensation of approximately 20,108 one-half grains of morphine sulphate, 8,955 one-quarter grains of morphine sulphate and an accurate and correct disposition of other narcotic drugs, from June 6, 1941 to and including August 2, 1943.

■ What has been said in the discussion of Counts 1 to 11 as to the need of clarity in pleading applies with equal force here. The indictment alleged specifically the time and place of the offense, as well as the nature thereof. There can be no doubt as to what appellant was charged with. He was charged with falsifying his dispensation record by omitting therefrom 20,108 one-half grains of morphine, 8,955 one-quarter grains of morphine, which were dispensed by him between June 6, 1941 and August 2, 1943. The only other thing that could have been set out was a showing as to time and place and person of each separate dispensation of this vast amount of drugs. All the government was required to do was to prove that the record was false. To illustrate: If the government proved that appellant purchased 50,000 grains of morphine and that his dispensation record showed that he had dispensed only 20,000 grains, it would have proved its case. The only questionable part of the count is that part which alleges that in addition to the drugs specifically set out, he failed to show

"other narcotic drugs" which he had dispensed. But the record shows that appellant's attack was directed against the count as a whole and not against this particular part. It is our conclusion that in the light of the record, the exception to Count 13 is not well founded.

■ Complaint is made that the trial court arbitrarily refused to grant a continuance to enable appellant to adequately prepare his defense. Appellant was arraigned on the 24th day of September. The court at that time advised him that the trial would be October 5. Inquiry was made as to whether he desired the appointment of counsel. He informed the court that he had counsel and would employ local counsel. No application for a continuance was made until October 4. The court indicated that he would continue the case from Wednesday to Thursday, and suggested that the District Attorney waive service of notice to take depositions and accompany appellant's attorney in the taking of the depositions. This the District Attorney agreed to do. Appellant's attorney, however, stated that they would be as ready to try the case on Wednesday as they would be on Thursday. The case was then tried on Wednesday. One reason urged for a continuance was that some of appellant's witnesses lived beyond the distance within which they could be compelled to attend, and it was therefore necessary to take these depositions at various points. Some witnesses could, however, have been subpoenaed and compelled to attend in person. No subpoenas were issued for such as could have been brought into court. Eleven days intervened between arraignment and the time of trial. Under all the circumstances of the case, we cannot say as a matter of law that the trial court abused its discretion in refusing to grant the application for a continuance.

It is urged that the evidence relating to Counts 1 to 11 was insufficient to sustain a verdict of guilty. Appellant practiced medicine in a small country town, having a population of from 800 to 1,000. There were three other doctors practicing in the town. The evidence established that from June 6, 1941 to August 2, 1943, appellant purchased the following amount of opium derivatives: 101,900 one-half grain tablets of morphine; 20,100 one-quarter grain tablets of morphine; 10 ⅛th ounce bottles of bulk morphine; 4,900 grains of morphine and atropine; and other assorted types and

---

[3] Nigro v. United States, 276 U.S. 332, 48 S.Ct. 388, 72 L.Ed. 600.

varieties of opium derivatives. Of these amounts, the record fails to reveal the dispensation of 20,108 one-half grain tablets of morphine; 8,955 one-quarter grain tablets of morphine; 4,821 one-quarter grain tablets of morphine and atropine, as well as some other shortages. The evidence also established that of these large amounts of drugs, appellant delivered 19,144 one-half grain tablets, 1,960 quarter grain tablets, and 2 ⅛th ounce bottles of bulk morphine to Earl Allen; 21,162 one-half grain tablets, 1,800 one-fourth grain tablets, and one ⅛th ounce bottle of bulk morphine to Grover Smith, and other like large quantities of drugs to other individuals. These drugs were expressed in quantity to so-called patients at distant points in Louisiana, Missouri, Oklahoma and elsewhere.

On June 14, 1943, William Schaefer, a government agent, using the name of Fred Schaefer, wrote appellant from Little Rock, Arkansas, asking him to send him 100 one-half grain tablets of morphine. He enclosed $50. Notwithstanding that appellant had never met the writer of the letter, the drugs were forwarded. Schaefer wrote at least one other letter asking for drugs, and enclosing money therefor, and the drugs were promptly sent.

■ As stated, appellant practiced in a town of from 800 to 1,000 inhabitants. There was abundant testimony by other doctors and by druggists who lived in Shidler that the amount of drugs dispensed by appellant was greatly in excess of any reasonable needs of a legitimate practice in that territory. Representatives of wholesale houses who sold drugs to appellant and were conversant with sales in such territory testified that appellant's purchases were excessive. Some testified that they refused to continue to furnish him with drugs. All of this evidence amply warranted the jury in concluding that the appellant was dispensing drugs in violation of the provisions of the act.[4]

■ It is contended that Counts 1 and 2 are based on sales made as a result of letters written by William Schaefer under the name of Fred Schaefer. These letters were decoy letters, written by government agent William Schaefer on the suggestion of another government agent, H. B. Westover. They were written for the admitted purpose of entrapping appellant.

There is no confusion as to the law of legal or illegal entrapment. The principle is well stated in C. M. Spring Drug Co. et al. v. United States, 8 Cir., 12 F.2d 852, 856, where the court said: "It is well settled by the decisions of the Supreme Court of the United States, we think now universally followed in the several circuits, that, where the government, through its agents, has reasonable cause to believe that the law is being violated by the defendant, they may legally entrap the defendant by decoy letters or by pretended purchases."

The agent Westover testified that he had been investigating appellant for eight or nine months; that he had narcotics purchased from appellant; that he took an informer to Shidler, Oklahoma, where he saw him go to appellant and later return; that this was repeated three or four times; that he became acquainted with Earl Allen and Charles Gholston, who were both addicts; that it was after a conference with Gholston that he prepared the decoy letter. We think this amply sustains the government's contention that the government through its agents had reasonable cause to believe that appellant was violating the law.

■ And, finally, error is predicated on the instructions of the court. The court instructed the jury that if appellant sold or dispensed drugs under certain conditions, he would be required to have the official form. Appellant's exception to this instruction is based on the erroneous assumption that physicians are exempt from the operation of the Act. As pointed out above, physicians are exempt from the operation of the Act only when they dispense drugs in the regular course of their practice only, or where drugs are dispensed pursuant to a written prescription by the physician. The indictment specifically alleged that these drugs were not dispensed under these exemptions. We think the court's instruction properly stated the law. Complaint is also made of the instruction in which the court told the jury that a physician is guilty under this statute if, knowing a person to be an addict and for the purpose of treating him for any other disease, he delivers or dispenses narcotics in amounts greater than is necessary to satisfy the addict's craving if consumed at one time, and intending that he should use the drugs by self-administration over a

---

[4] Hawkins v. United States, 5 Cir., 90 F.2d 551; Simmons v. United States, 6 Cir., 300 F. 321; Sevensma v. United States, 6 Cir., 278 F. 401.

period of time. This instruction is clearly correct under the decision of the Supreme Court in Webb v. United States, 249 U.S. 96, 39 S.Ct. 217, 63 L.Ed. 497. See, also, Hoyt v. United States, 2 Cir., 273 F. 792.

Objections are made to some of the other instructions of the court. These objections are not of sufficient substance to merit a detailed discussion. We have given them consideration and find them without merit.

The judgment of the trial court is affirmed.