**CARLTON v. UNITED STATES.**

No. 13344.

United States Court of Appeals Ninth Circuit.

Aug. 29, 1952.

Fred N. Howser and C. J. Scott, Los Angeles, Cal., for appellant.

Walter S. Binns, U.S. Atty., Ray H. Kinnison, George M. Treister, Assts. U.S. Attys., Los Angeles, Cal., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and BONE, Circuit Judges.

BONE, Circuit Judge.

Appellant was indicted on four counts for violating 21 U.S.C.A. Section 174, pertinent portions of which are set forth below.[1] The indictment charged: (1) the sale, on or about October 23, 1951, to Ralph M. Frias (a government agent), of approximately 401 grains of morphine; (2) the sale, on or about October 19, 1951, of 311 grains of morphine; (3) the receipt, concealment and facilitation of the transportation of the narcotics referred to in Count 1; (4) the receipt, concealment and facilitation of the transportation of the narcotics referred to in Count 2. The jury acquitted him as to Counts 2 and 4; found him guilty as to Counts 1 and 3.

On this appeal, appellant urges reversal, alleging that (1) the trial court erred in admitting evidence, over objection, that appellant had been convicted of a *misdemeanor narcotic violation* in the year 1948; (2) that government counsel was guilty of prejudicial misconduct by virtue of having asked appellant if he had been convicted of a *narcotic offense* in 1938.

At the trial, the appellant offered a defense of entrapment, contending that the government, through its agents, induced the appellant to commit a crime which he otherwise would not have committed. A brief statement of the evidence introduced by the prosecution is indispensable to an understanding of the precise legal question posed by appellant's first specification of error.

Ralph Frias, a federal agent of the "under-cover" variety, and a witness for the prosecution, testified that he met appellant at a Los Angeles cafe on October 23, 1951, the meeting having been previously arranged through a third-party. Frias stated that he had met appellant on a previous occasion, and that on this second meeting (October 23, 1951) he (Frias) complained to appellant that a previous purchase of morphine (allegedly delivered by appellant to Frias through certain go-betweens) had been tampered with and a portion of the contents pilfered.[2] After having been assured by appellant that such thievery would not again occur, Frias made arrangements to purchase an ounce of morphine from appellant. Later in the evening of October 23rd, on the corner of Vernon and Avalon Streets in Los Angeles, Frias testified that he paid appellant $350, in return for which, a short while thereafter, one Trix presented Frias with a package which subsequently was found to contain the 401 grains of morphine referred to in Count 1 of the indictment.

Appellant based his defense of entrapment upon his own testimony that agent Frias, after inviting him to have a cup of coffee on the evening in question, informed him that he (Frias) was a government agent and stated "I want your help to catch whoever [is] selling dope down here." Appellant related that one Trix was mentioned, contacted, and that Trix volunteered that "a piece of stuff" (explained to mean one ounce of dope) could be had for $350. Thereafter (according to appellant's testimony) the three men entered appellant's car, and drove, at Trix's direction, to Avalon and Vernon Streets in Los Angeles. Appellant testified that en route to this point, agent Frias handed him some money, but he (appellant) did not check the amount. Appellant thereafter, again at the direction of Trix, telephoned a designated number, where the person with whom he spoke instructed him to deposit the money "under a brick" at a given in-

1. If any person fraudulently or knowingly * * * receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, such per-
son shall upon conviction be fined not more than $5,000 and imprisoned for not more than ten years."

2. It was this alleged transaction which comprised the charge reflected in Counts II and IV on which appellant was acquitted.

tersection. Appellant deposited the money as instructed, then called the party with whom he had previously conversed, informing the latter that the money had been cashed as directed. Appellant was then told (by the person with whom he conversed on the telephone) to advise Trix that the package in question would be located in an alley at a stated address in Los Angeles. Appellant then rejoined Frias and Trix, and drove Trix to the designated location for their rendezvous with the hidden package. Agent Frias followed via taxicab. Appellant further testified that upon their arrival at the point where the package was located, he let Trix out of his car and drove to his home. Fifteen days later on November 7, 1951, appellant was arrested.

On cross-examination the prosecution, over objection, interrogated appellant in the following manner :

"Q. All right. Now I want to talk about the year 1948, Mr. Carlton. In October or November, 1948, in Los Angeles, were you convicted or did you enter a plea of guilty to a charge of violating the California narcotics laws?

[objection of defense counsel overruled]

\* \* \* \* \* \*

"A. Yes, I pleaded guilty."

It is the contention of appellant that the trial court erred in permitting evidence of the prior narcotics conviction because, says appellant, it is a violation of the rule of exclusion under which a defendant may be tried for no offense other than that with which he is charged. More specifically, appellant agrees that when a defendant testifies in his own behalf, he thereby assumes the position of an ordinary witness and may be *discredited* on cross-examination through inquiries as to his previous convictions of crimes. But, argues appellant, "we do not believe that such questioning may be extended to *misdemeanors,* either for the purpose of affecting his credibility or showing a criminal design or predisposition to commit the offense charged." Such evidence of other crimes, according to appellant's theory, must be excluded because its probative value is outweighed by its possible prejudicial effect.

The prosecution insists that when a defendant raises the defense of entrapment (as here) his record of previous convictions of similar or related criminal offenses, *both misdemeanors and felonies,* becomes admissible as *evidence in rebuttal.* In its brief it suggests that it is unnecessary, on this appeal, to consider the general rule that past criminal acts are inadmissible in the prosecution's case in chief to prove a defendant's predisposition to commit the crime charged. Nor should we consider the exceptions to that rule, which permit the prosecution to prove, in its case in chief, an accused's previous criminal acts in order to show intent, general scheme or design, motive, etc. We agree that such questions are extraneous to the instant issue.

The precise problem here posed concerns *the scope of permissible rebuttal evidence* after the defendant has introduced a defense of entrapment. That is the question we here decide.

The controlling decision is Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 216, 77 L.Ed. 413. There, the prosecution contended that the defense of entrapment must be raised as a plea in bar before trial, and could not be raised during the trial itself under a plea of not guilty. In arguing its case, the prosecution insisted to the court that the *trial of the entrapment issue* before a jury would prejudice a defendant, inasmuch as rebuttal evidence relating to suspicions of his past criminal proclivities, his reputation, and evidence of past crimes would then become admissible. Chief Justice Hughes, speaking for the majority, refused to accept this argument of the prosecution in that case, stating:

"Objections to the defense of entrapment are also urged upon practical grounds. But considerations of mere convenience must yield to the essential demands of justice. The argument is pressed that if the defense is available it will lead to the introduction of issues of a collateral character relating to the activities of the officials of the govern-

ment and to the conduct and purposes of the defendant previous to the alleged offense. For the defense of entrapment is not simply that the particular act was committed at the instance of government officials. That is often the case where the proper action of these officials leads to the revelation of criminal enterprises. Grimm v. United States [156 U.S. 604, 15 S.Ct. 470, 39 L.Ed. 550], supra. The predisposition and criminal design of the defendant are relevant. But the issues raised and the evidence adduced must be pertinent to the controlling question whether the defendant is a person otherwise innocent whom the government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials. If that is the fact, common justice requires that the accused be permitted to prove it. The government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused, *and if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense.*" (Emphasis ours.)

As the government in the instant case points out in its brief, the dissenting justices in the Sorrells case understood the majority holding as making admissible the very same type of evidence which, in this Carlton proceedings, the government attempted to introduce against appellant:

"It has been generally held, where the defendant has proved an entrapment, it is permissible for the government to show in rebuttal that the officer guilty of incitement of the crime had reasonable cause to believe the defendant was a person disposed to commit the offense. *This procedure is approved by the opinion of the court.*" (Emphasis ours.)

Attempts made by appellant to distinguish the Sorrells case, and the language of the

majority therein, are without persuasive force and need not be further discussed.

Ryles v. United States, 10 Cir., 1950, 183 F.2d 944, certiorari denied, 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 637, involved an appeal from a narcotics conviction. The appellant had a criminal record for violation of the narcotics laws, and had a reputation as a dealer in narcotics, and in affirming the conviction and approving an instruction given the jury on the entrapment issue by the trial court, the Tenth Circuit outlined the type of evidence admissible to rebut the defense of entrapment in these words:

"When the defense of entrapment is interposed, the predisposition and criminal design of the defendant becomes relevant and the government may introduce evidence relating to the conduct and the predisposition of the defendant as it bears upon the issue of entrapment. The record and the reputation of the defendant become important upon this issue in rebuttal. Sorrells v. United States, supra, 287 U.S. at page 251, [451] 53 S.Ct. 210. * * *"

See also Fisk v. United States, 6 Cir., 1922, 279 F. 12; Billingsley v. United States, 6 Cir., 1921, 274 F. 86; Strader v. United States, 10 Cir., 1934, 72 F.2d 589; United States v. Siegel, D.C., 1926, 16 F.2d 134, 8 Cir., 1927, 21 F.2d 1019. Cf. Mitchell v. United States, 10 Cir., 1944, 143 F.2d 953, 957; Hodge v. United States, 6 Cir., 1926, 13 F.2d 596, 597.

There is no just reason to limit such rebuttal evidence (when the defense of entrapment is interposed) to offenses having the stature of a felony; once the entrapment defense is relied on the burden falls upon the prosecution to show that reasonable grounds existed for believing that the accused was engaged in the particular unlawful business charged. Business is business, and where one becomes a purveyor of narcotics, whether or not he dabbles in such a criminal activity as an avocation, or devotes all of his time and energies to it, is wholly immaterial.

In the Siegel, Fisk, Billingsley, and Strader cases, supra, evidence of previous *related offenses* was held to be properly admitted, even though the accused had neither been

convicted nor arrested for such crimes. As pointed out in Sauvain v. United States, 8 Cir., 1929, 31 F.2d 732, 733 (where the defendant had neither been prosecuted nor arrested for the prior criminal activity):

> "Care should be exercised in admitting evidence of other and distinct offenses; trials might soon become so involved in collateral matters that the issues would be lost sight of; moreover, if the defendant is shown to have made another sale, juries are apt to convict regardless of the evidence on the offense charged, and the defendant having no notice of the collateral charge, might be entirely unprepared to meet it. *However, it appears here that the defendant claims he was entrapped; to meet that issue, the government may properly show that the defendant was a dealer and not a victim of zealous officers.* The Sixth Circuit has ruled that *evidence of other transactions* are admissible to rebut the defense of entrapment. Billingsley v. U. S., 6 Cir., 274 F. 86." (Emphasis ours.)

It should be pointed out that the 1948 offense, about the commission of which appellant was interrogated on cross-examination, was, like the present prosecution, one involving a narcotics violation. It was a prosecution under Section 11500 of the California Health and Safety Code which provides:

> "no person shall possess, transport, sell, furnish, administer or give away, * * * or attempt to transport a narcotic except upon the written prescription of a physican, dentist, chiropodist, or veterinarian licensed to practice in this State."

The circumstance that the violation of such section constituted only a *misdemeanor*, has no bearing whatsoever on admissibility of the evidence the introduction of which appellant assigns as error.

We have defined the question before this court and since the felony-misdemeanor distinction upon which appellant relies is patently non-germane to a responsive discussion of this issue, we reject it, and with it, the specification of error it allegedly supports. For the reason indicated admission of the evidence did not deprive appellant of a right which the law protects.

Appellant predicates his second specification of error on the allegedly prejudicial misconduct of the prosecution in asking him on cross-examination whether he had been convicted of a narcotics offense in 1938. He denied such a conviction and his contention is not only that such a line of interrogation is inadmissible (which is the same argument propounded and rejected herein as to Specification of Error No. 1) as a general proposition, but that the government had no sufficient basis for an inquiry regarding a 1938 narcotics offense.

The discussion regarding appellant's first specification of error is equally pertinent to this contention. As to appellant's argument that the prosecution had no basis for making an inquiry concerning a 1938 narcotics violation, we again must disagree. The records of the Federal Bureau of Investigation indicate that a person named Walter Lee Carlton served a sentence in Los Angeles on a narcotic charge in that year. Even if it be true, as appellant contends, that he was never in the State of California during 1938, the prosecution nevertheless had reasonable grounds to believe that appellant was the Walter Lee Carlton named in their records, and since appellant was contending that he had been entrapped, it was entirely proper for the prosecution to make manifest such reasonable grounds to the jury.

Appellant refers to Pearson v. United States, 6 Cir., 192 F.2d 681, 698, 699, as describing the asking of such a question by the prosecution as " * * * prejudicial to the right of the defendant to a fair trial." Appellant, however, in so doing, apparently chose to ignore the qualifying language used by the Sixth Circuit, which plainly indicates that they were speaking of a situation entirely different than that now before us. In the Pearson case, the court expressly noted that " * * * there was no basis for such an inquiry". We have previously adverted to the circumstances which cause us to conclude that such a basis was present in the instant case.

It should also be pointed out that in Pearson, supra, as well as in the cases upon

which that decision relies, the defense of entrapment was not presented. The fact situations in these cases were different, and the comments of the courts dealing with wholly different sets of circumstances are irrelevant in dealing with the specific issue in the instant case.

■ Although we believe it to be the better practice for the prosecution to produce the record of such past convictions where it is available, we find no prejudicial error involved in the failure to present it here. Had the appellant admitted the conviction of the 1938 offense, the admission would obviously have been relevant in rebutting the defense of entrapment, as we have hereinbefore stated. Here, the presence and introduction of a record of such offense would not be proper *for impeachment purposes* since the violation about which appellant was questioned *was a misdemeanor rather than a felony. For impeachment purposes,* the rule is that a misdemeanor conviction is inadmissible.

The record reveals that the trial judge carefully instructed the jury to wholly disregard the prosecutor's question concerning a 1938 conviction. On the whole record and in the whole setting of the trial we think that no substantial rights of appellant were invaded. His specifications of error are void of merit; he had a fair trial and the judgment of conviction must be and is affirmed.