UNITED STATES of America,
Plaintiff-Appellee,

v.

James Lloyd McCLAIN,
Defendant-Appellant.

No. 75–1092.

United States Court of Appeals,
Ninth Circuit.

Feb. 13, 1976.

Roger S. Hanson (argued), Santa Ana, Cal., for defendant-appellant.

Howard A. Allen, Asst. U. S. Atty. (argued), Terry J. Knoepp, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

## OPINION

Before DUNIWAY and ELY, Circuit Judges, and SOLOMON,* District Judge.

DUNIWAY, Circuit Judge.

McClain appeals from a judgment of conviction entered upon a jury's verdict that he is guilty of possession of just over a kilogram of cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). We affirm.

### 1. *Facts*

We state only such facts as are necessary to an understanding of the questions presented, and in doing so we consider the evidence in the light most favorable to the government, the jury having found in its favor.

In early June, 1974, Agent Geoffrey Green of the Drug Enforcement Administration, stationed at Las Vegas, Nevada, was taken by F.B.I. Agent Zimmerman to a mountain lodge northwest of Las Vegas called Mt. Charleston. There, Green was introduced to two men, the proprietors of the lodge, named Peterson and Cobb. Cobb told Green that a man whom he knew as "James" was offering cocaine for sale in kilogram lots. Green told Cobb that when Cobb heard from "James" again, Cobb should tell "James" that he had a friend who would be interested in buying kilo quantities of cocaine. After again hearing from Cobb, Green arranged to have Cobb flown to San Diego on June 26. Later that day, Cobb telephoned Green, and Green then flew to San Diego. He telephoned Cobb at a hotel and then met him there. Cobb called "James" and Green talked to him, arranging to meet him at the hotel lounge. The proposed transaction was a sale by "James" to Green of a kilogram of cocaine for $35,000. Cobb told Green that "James" would probably be driving one of two cars which Cobb described in precise detail. "James," who turned out to be defendant McClain, arrived at about 11:30 p.m. After some negotiations over the price to be paid, McClain told Green that "the coke" was nearby in his car, which was in the hotel parking lot. Cobb was sent out to see whether the cocaine was in the car, the Volkswagen previously described by Cobb to Green. Cobb reported that it was there and told where it was hidden. Green, Cobb, and McClain then left the building in which the meeting took place so that Green could show McClain the money. On a signal by Green, McClain was arrested by waiting officers. A small amount of cocaine was found on his person.

Immediately after the arrest, and at Green's direction, other officers searched McClain's car without a warrant and recovered the cocaine. It was hidden where McClain had said that it was.

McClain's defense was that Peterson and Cobb had it in for him because he had borrowed $1,000 from Cobb and not paid it

---

* Honorable Gus J. Solomon, United States Senior District Judge for the District of Oregon, sitting by designation.

back, and that they had coerced him into handling the cocaine for them. He said that in late May Peterson, Cobb and one Halling came to his cabin in Ramona near San Diego, and that Peterson had beaten him up, that the beating stopped only when he promised to do whatever he was told to do, and that he was in fear of his life.

Because Cobb's expenses in going to San Diego, or part of them, were paid by the government, the court submitted the issue of entrapment to the jury. It also submitted the issue of coercion. In partial response to these defenses, the court, over proper objection, permitted the government to present testimony by two witnesses that one Dusty Wooten, an acquaintance of McClain's, had said that McClain was a good outlet for cocaine.

McClain makes three legal arguments for reversal, which we consider separately.

## 2. *Validity of the Search of McClain's Car*

McClain argues that the search of his car violated his rights under the fourth amendment and that therefore the court erred in denying his motion to suppress the cocaine found in the car. We cannot agree.

There can be no question that Agent Green had probable cause for the search. McClain himself had told Green that the cocaine was in the car and where it was hidden in the car. Cobb had confirmed what McClain had said. Thus the only arguable question is whether the agents should have obtained a search warrant. In considering that question, we must attempt to reconcile the irreconcilable, the decisions of the Supreme Court in *Chambers v. Maroney,* 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 and *Coolidge v. New Hampshire,* 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. We may not succeed in accomplishing the reconciliation, but we find *Chambers* and later cases that follow it applicable here.

In *Carroll v. United States,* 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, the Court upheld a warrantless search of a car stopped on the open highway where the occupants were not arrested, on the grounds that the opportunity to search was fleeting. Had the car not been searched on the spot, the occupants could have driven it away before a warrant could be obtained. In *Chambers, supra,* the defendant bank robbers were fleeing in a car. The police stopped the car and, having probable cause, arrested the occupants. Instead of searching the car on the spot, the police took it to the police station and searched it there, without having obtained a warrant. The Court upheld the warrantless search. It reasoned that, under *Carroll, supra,* the police could have searched the car on the spot because otherwise, to prevent possible loss of the evidence, they would have had to impound the car while they obtained a warrant. It then concluded that impoundment was no less an intrusion than a search would have been, that either would be reasonable, and that it was not necessary for the police to obtain a warrant before searching the impounded car.

Our case differs in two respects. First, the car was not impounded; it was searched on the spot. This, we think, is immaterial under the *Chambers* rationale. Second, the defendant was not arrested while driving the car, nor on a public highway. He had parked it in a large hotel parking lot and left it there while he went to meet the informant and the undercover agent. This difference, too, we think to be immaterial. Here, as in *Chambers,* the car was in a public place late at night, accessible to anyone who might want to reach it. Here, as in *Chambers,* McClain could have had accomplices in the vicinity who might drive the car away while the agents were getting a warrant. Here, as in *Chambers,* the alternative to an immediate search that would assure the continued availability of the car and its contents was to impound it. *Chambers* makes it clear that the police need not adopt this alternative, but may search at once.

Were it not for *Coolidge, supra,* we would unhesitatingly follow *Chambers* in this case. In *Coolidge,* the police went to the suspect's home to arrest him. Having arrested him

in the house, they also searched his car, which was sitting in his driveway. They had no warrant, but had cause on the basis of which they could have obtained one, both for Coolidge's arrest and for the search of his car. The Court held that the search violated the fourth amendment. It said, first, that Coolidge, being under arrest, had no way to get at the car. That is equally true of McClain in our case. Coolidge's wife was told by the police that she must leave the house and could not use the car, and the police took her to the home of a relative in another town. And the house was guarded throughout the night by two policemen. Finally, in a footnote, the Court made the following statement, which bothers us somewhat.

> In this case, it is, of course, true that even though Coolidge was in jail, his wife was miles away in the company of two plainclothesmen, and the Coolidge property was under the guard of two other officers, the automobile was in a literal sense "mobile." A person who had the keys and could slip by the guard could drive it away. We attach no constitutional significance to this sort of mobility.

Fn. 18, 403 U.S. at 461, 91 S.Ct. at 2035. It strikes us that these are just the sort of possibilities that were held to justify the police action in *Chambers*. Be that as it may, we think that the ultimate *Coolidge* rationale is stated in the opinion (403 U.S. at 462, 91 S.Ct. at 2035) as follows:

> And surely there is nothing in this case to invoke the meaning and purpose of the rule of *Carroll v. United States*—no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where "it is not practicable to secure a warrant," *Carroll, supra,* at 153, 45 S.Ct., at 285, and the "automobile exception," despite its label, is simply irrelevant.

The case at bar differs in what we regard as crucial respects. Here the car, while not on "an open highway," was in a public place, readily accessible to anyone who might want access. Here there was contraband, valued by McClain at $35,000. Here, especially because of the value of the contraband, there could well have been confederates waiting to move the evidence. Moreover, Cobb had told Agent Green "that there might be other people in the area." In addition, the arrest occurred in the middle of the night and the officers did not know, until not more than half an hour before, which car would be used or whether contraband would be in it. Obtaining a warrant in advance would hardly have been possible. Here there would have been the inconvenience of a special police detail to guard the immobilized automobile, or the alternative used in *Chambers,* impoundment.

But for the subsequent cases we might have concluded that *Coolidge* has severely limited *Chambers,* but those cases indicate to us that it has not. *See, e. g., Cady v. Dombrowski,* 1973, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706, in which the majority relies, in part, on *Chambers* and the dissent relies heavily on *Coolidge; Cardwell v. Lewis,* 1974, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325, in which again the majority relies, in part, on *Chambers* and the dissent relies heavily on *Coolidge; Texas v. White,* 1975, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209, in which the majority relied exclusively on *Chambers*; and *see United States v. Watson,* 1976, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598, reversing our decision in *United States v. Watson,* 9 Cir., 1974, 504 F.2d 849, in which we relied heavily upon *Coolidge.*

Some of our decisions which are closely in point support our application of the principles of *Chambers* to the search in this case. *McNeary v. Stone,* 9 Cir., 1973, 482 F.2d 804, 807, closely resembles *Chambers*; the defendant was arrested and his car impounded and later searched, all without a warrant. We relied entirely on *Chambers. United States v. Beasley,* 9 Cir., 1973, 476

F.2d 164, 165–6, is like *McNeary, supra,* relies on *Chambers,* and distinguishes *Coolidge.* In *United States v. Evans,* 9 Cir., 1973, 481 F.2d 990, the police, having probable cause, arrested the defendant at a house. He was not in the car, but it was at the house. The police searched the car without a warrant. The district court suppressed evidence found in the search and we reversed, relying heavily on *Chambers.* The dissent relies on *Coolidge.* Those of our decisions on which *McClain* relies do not help him. It can be argued that *Ramon v. Cupp,* 9 Cir., 1970, 423 F.2d 248, which was decided before *Chambers,* is not consistent with *Chambers.* Moreover, in *Ramon* we emphasized that there were no exigent circumstances. In *United States v. Payne,* 9 Cir., 1970, 429 F.2d 169, there were no exigent circumstances. Here, there were.

It was not error to deny the motion to suppress.

### 3. *Admissibility of Hearsay to Show Predisposition*

McClain argues that it was reversible error to admit the testimony as to what Dusty Wooten had said to certain witnesses about McClain—namely, that he was a good outlet for cocaine. The court allowed it on the theory that such hearsay is admissible to show predisposition to commit the offense, in response to an entrapment defense.

Certain decisions of the Fifth Circuit do support this notion. *United States v. Fink,* 5 Cir., 1974, 502 F.2d 1, 4–5; *United States v. Simon,* 5 Cir., 1973, 488 F.2d 133; *United States v. Brooks,* 5 Cir., 1973, 477 F.2d 453; *United States v. Robinson,* 5 Cir., 1971, 446 F.2d 562, 563–4; *Thompson v. United States,* 5 Cir., 1968, 403 F.2d 209, 210; *Rocha v. United States,* 5 Cir., 1968, 401 F.2d 529, 530; *Washington v. United States,* 5 Cir., 1960, 275 F.2d 687, 690. These cases stand for a proposition that, to us, is astonishing. They hold that, when a defendant sets up the defense of entrapment, the government can put a witness on the stand and have him testify that unknown informants, of unknown reliability, have told the witness, or have made reports to others that the witness has seen or been told about, that the defendant was dealing in narcotics; this to prove defendant's predisposition! If there be any reasonable rationale for this remarkable exception to the hearsay doctrine, we have not found it in any of the foregoing cases. We can conceive of no way in which a defendant can answer this kind of evidence. It invokes the "faceless informer" at his worst. Yet the opinion in *United States v. Fink, supra,* expressly approves the action of the trial court in refusing to let the defendant see or even ask about the specific bases for the witness' testimony. Most of the foregoing cases embody no rationale; they are brief per curia citing earlier cases.

*United States v. Washington, supra,* is the leading Fifth Circuit case. It was decided at a time when the courts felt that it was proper for the government to show that, when its agent set out to buy narcotics from the defendant, the agent had reasonable grounds to believe that the defendant was engaging in criminal activities. This was the ground upon which admission of the evidence was upheld in *Washington, supra.* We doubt that this notion is valid today; it is not the state of mind of the government agent that is important; at least since the decision in *United States v. Russell,* 1972, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366, it is the "predisposition of the defendant" to commit the offense (id. at 427, 93 S.Ct. 1637), that is, his state of mind, that counts. In *Washington, supra,* the Fifth Circuit found no error when the trial court told the jury that it could consider the hearsay not for its truth, but only to determine whether the government agent had good cause to believe that Washington was trafficking in narcotics. 275 F.2d at 690. The court noted that there had been no objection to this charge. As rationale, however, Judge Wisdom said (at p. 690):

> Once the defense of entrapment has been raised, it is proper to inquire into the reputation of the defendant to determine his predisposition to commit the offense or to inquire into the reasonableness of

the officer's conduct. *Sherman v. United States,* supra; *Sorrells v. United States,* supra; *Accardi v. United States,* supra; *Mitchell v. United States,* 10 Cir., 1944, 143 F.2d 953.

It is this brief rationale that has been carried over in the later cases.

Yet not one of the authorities cited in *Washington* sustains the admission of hearsay testimony of the type used in *Washington.* The only relevant language in *Sherman v. United States,* 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, which held that Sherman had been entrapped as a matter of law, is a passing reference to receipt in evidence by the trial court of Sherman's past record of two narcotic convictions. (id. at 375, 78 S.Ct. 819). The court did not rule on the admissibility of this evidence. In *Sorrells v. United States,* 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, which also held that there had been entrapment as a matter of law, there was no ruling at all upon the admissibility of evidence. The only remotely relevant language in the opinion is this (p. 451, 53 S.Ct. p. 216):

> The Government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused, and if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue.

This hardly amounts to the creation of a brand new exception to the hearsay rule! *Accardi v. United States,* 5 Cir., 1958, 257 F.2d 168, does not deal with the admissibility of evidence at all. This is equally true of *Mitchell v. United States,* 10 Cir. 1944, 143 F.2d 953. Thus the authorities cited in *Washington* do not support the decision, even as limited by the trial judge's instruction.

Subsequent Fifth Circuit cases slide from *Washington's* holding that hearsay is admissible to show the government agent's good faith to holding it admissible to show the defendant's predisposition, without any apparent realization that the slide is inappropriate. A government agent's good faith belief that the defendant is a dealer, like probable cause, can rest upon hearsay which may or may not be true. But a hearsay statement that the defendant is a dealer can rationally be accepted as a basis for an inference that defendant is predisposed to deal only if the hearsay statement is true. This is a classic example of the improper use of hearsay. The impropriety of it is emphasized by the Fifth Circuit's refusal to permit the defendant even to find out who the person or persons who made the statement may be.

In at least two circuits, the position of the Fifth Circuit has been squarely rejected. *Whiting v. United States,* 1 Cir., 1961, 296 F.2d 512; *United States v. Ambrose,* 6 Cir., 1973, 483 F.2d 742. These cases recognize that predisposition can be shown by prior convictions for similar conduct (*Whiting,* 296 F.2d at 516), by prior similar conduct (*Whiting,* 296 F.2d at 516; *Ambrose,* 483 F.2d at 748), and by proper proof of character (*Whiting,* 296 F.2d at 517; *Ambrose,* 483 F.2d at 748). But both reject the kind of hearsay permitted by the Fifth Circuit. As the court said in *Ambrose* (483 F.2d at 752):

> Agent Bilbo admitted that the atlid lists consists of names supplied by anonymous informants. He admitted that some of this anonymous information has proved reliable and some has not. On such ephemeral evidence, without even an attempt to satisfy the requirements ordinarily imposed upon the introduction of reputation evidence, the Government based its argument to the jury that appellant was predisposed to sell non-tax-paid liquor. This evidence would not even be sufficient to establish that the agent had good cause to suspect appellant (assuming that is a relevant inquiry), let alone competent to show that appellant possessed the requisite guilty intent.

Our own decisions are not in very good array. In *Carlton v. United States,* 9 Cir., 1952, 198 F.2d 795, 797, we held that the defendant's "record of previous convictions of similar or related criminal offenses, *both*

*misdemeanors and felonies "* are admissible as *"rebuttal evidence* after the defendant has introduced a defense of entrapment." (p. 797; emphasis in original.) *Trice v. United States,* 9 Cir., 1954, 211 F.2d 513, is similar to *Washington v. United States, supra,* in holding that hearsay evidence that Trice was an opium dealer was admissible, not to prove the truth of the hearsay, but to prove the good faith of the government agent. (211 F.2d at 516–518) It bears emphasizing that defense counsel in *Trice* did not object. This is not a holding that such evidence is admissible to prove Trice's predisposition.

In *Pulido v. United States,* 9 Cir., 1970, 425 F.2d 1391, the evidence admitted in response to the entrapment defense of a defendant who sold heroin to a government agent was (a) testimony by the informer that he had known the defendant for more than ten years and that he had a reputation as being involved in narcotics, and (b) proof that, 12 years before, the defendant had been arrested on state narcotics charges. Proof of the arrest arguably falls within our holding in *Carlton, supra. See,* however, *Sherman v. United States, supra,* 356 U.S. at 375–6, 78 S.Ct. 819, where the court held that old convictions were insufficient to show predisposition. The "character" evidence is not further described, and for all that appears it may have been such as to fall within the long established hearsay exception for such evidence. *See* Fed.Rules of Evidence, Rule 803(21) and Rules 404(a)(1) and 405(a). Moreover, the only objection to it appears to have been that it related to a remote period. (425 F.2d at 1393). Be that as it may, we indulged in the following dictum (p. 1394):

> Arrest records for related offenses should be treated as one species of hearsay evidence of predisposition. Several circuits have recognized that hearsay evidence of acts showing predisposition may be admissible. *Trice v. United States,* 9th Cir., 211 F.2d 513, cert. denied, 348 U.S. 900, 75 S.Ct. 222, 99 L.Ed. 707; *Rocha v. United States,* 5th Cir., 401 F.2d 529, cert. denied, 393 U.S. 1103, 89 S.Ct.

905, 21 L.Ed.2d 796; *Washington v. United States,* 5th Cir., 275 F.2d 687.

We do not think that *Pulido* is authority that supports admission of the sort of evidence admitted in the case at bar.

*United States v. Walton,* 9 Cir., 1969, 411 F.2d 283, was another case in which a defendant who sold heroin to a government agent claimed that he had been entrapped by a government informer. In response, two government agents testified that the informant in the case and another informant had told them that the defendant was supplying narcotics to peddlers. Defense counsel did not object. (*See* 411 F.2d at 290–91). Moreover, it was defense counsel who opened up the subject. Consequently, we held that reversal was not required. However, in footnote 12, p. 291, we expressly rejected the notion, which was the starting point for the Fifth Circuit line of cases, that the hearsay was admissible to show the good faith of the government agent(s).

■ We conclude that it was error to admit the hearsay testimony to which objection is made in this case. The government made no attempt to bring the hearsay testimony within the provision for new exceptions to the hearsay rule stated in Fed. Rules of Evidence 803(24). There remains only the question whether the error was harmless, F.R.Crim.P. Rule 52(a). We conclude that the error was harmless. It did "not affect the substantial rights" of McClain. (Rule 52(a) ).

■ In the first place, it is, to say the least, doubtful that McClain was entitled to claim entrapment at all, for two reasons. First, the defense of entrapment is based on the notion that the commission of the crime was induced by a representative of the government. *Sorrells v. United States, supra,* 287 U.S. at 441, 442, 444, 445, 448, 451, 53 S.Ct. 210; *Sherman v. United States, supra,* 356 U.S. at 372, 373, 376, 78 S.Ct. 819; *United States v. Russell, supra,* 411 U.S. at 428–9, 433, 434–5, 93 S.Ct. 1637. In this case it is doubtful that Cobb was an agent of the government. He approached

the government with information. The government had no "handle" on him—he was not accused of an offense and trying to avoid conviction; he was not being paid. It is only because, when he told Green that McClain had cocaine for sale in San Diego, Green paid his fare to go there to set up a deal that it can be argued that he was a government agent. This is a thin basis for a claim that the government induced McClain to commit a crime that he was not at all predisposed to commit. Moreover, and more important, McClain has not asserted, at any time, that Cobb cajoled him into committing a crime. On the contrary, his claim is, and has been throughout, that Peterson coerced him into committing the offense. But there is no basis whatever in this record for a claim that Peterson was an agent of the government.

Finally, even if we assume, contrary to what the record shows, that Cobb and Peterson were both government agents, the evidence against McClain is so strong, and the hearsay testimony is so small a part of the record, as to be harmless. The testimony was not, as in the Fifth Circuit cases, that a government agent had been told by an unknown number of unknown informants that McClain was dealing in narcotics. Cobb testified that Dusty, a friend of McClain, told him that he had a friend in San Diego who was a good outlet for cocaine. Cobb did not say that Dusty named McClain. Peterson testified that Dusty said that he had a friend in San Diego named James who was a good outlet for cocaine. Both Cobb and Peterson also testified that Dusty took them to San Diego to meet the outlet, who turned out to be McClain, and that they talked to him about dealing in cocaine. Dusty was well-known to McClain, but so far as the record shows, no attempt was made to call him to the stand. Both Cobb and Peterson were subjected to extensive cross-examination. The evidence that McClain was not induced by any government agent to commit the offense is overwhelming. There is no evidence that McClain was coerced by any government agent. We conclude that, in this case, the admission of the hearsay was harmless.

### 4. Coercion

Coercion, if it be by government agents, can well be said to be an extreme form of entrapment—i. e., government activity that causes the defendant to commit a crime that he was not predisposed to commit. But that, as we have seen, is not what we have here. In this case, the claim is that the coercion was by Peterson. It is established by the testimony of numerous witnesses, including Peterson, that in late May he, Cobb and Halling went to Ramona to McClain's cabin and Peterson beat him up. McClain's story was that the beating only stopped when he agreed to do whatever he was told to do, that he feared for his life, and that the person he feared was Peterson.

 Coercion by a third party not connected with the government can be a defense, and we can conceive of cases in which proof of predisposition would not defeat the defense. For example, a professional safe cracker, predisposed to crack safes, might still be able to show that the only reason he pulled a particular job was because his cohorts in crime, whom he knew to be ruthless killers, forced him to cooperate with them at gunpoint. But nongovernmental coercion, like governmental coercion, requires more than threats. The threat must be "of such a nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done." In addition, there must be a showing that "the fear was well grounded and that there was no reasonable opportunity to escape." United States v. Gordon, 9 Cir., 1975, 526 F.2d 406, 407. These additional elements do not appear in this case.

We find no error in the denial or giving of instructions, except for the instruction that the jury could consider the hearsay on the issue of predisposition. In this case, however, for the reasons stated, the error was harmless. Otherwise, the instructions on entrapment and coercion were as favorable as McClain could ask.

Affirmed.