**UNITED STATES of America Plaintiff-Appellee,**

v.

**Rafael R. MARTINEZ, Jr., Defendant-Appellant.**

**No. 72-2685.**

United States Court of Appeals, Fifth Circuit.

July 3, 1973.

Rehearing and Rehearing En Banc Denied Aug. 14, 1973.

Anthony Nicholas, San Antonio, Tex., for defendant-appellant.

William S. Sessions, U. S. Atty., Joel D. Conant, W. Ray Jahn, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GEWIN, THORNBERRY and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

On this appeal, Rafael R. Martinez seeks the reversal of his two count conviction for (1) conspiring to import approximately 628 pounds of marijuana into the United States, 21 U.S.C. §§ 952(a), 963, and to possess the same with intent to distribute, 21 U.S.C. §§ 841(a)(1), 846, and (2) the substantive offense of possessing marijuana with intent to distribute, 21 U.S.C. § 841(a)(1). He attacks his conviction on the following grounds; (1) the search and seizure which yielded the marijuana introduced into evidence violated the fourth amendment; (2) the declaration of two alleged co-conspirators were inadmissible under the co-conspirators exception to the hearsay rule; (3) the evidence was insufficient to support his conviction; (4) the special parole provisions under which he was sentenced, 21 U.S.C. §§ 841(b)(1)(B), 960(b)(2) violate the due process and the cruel and unusual punishment clauses of the constitution; and (5) Title II of the Drug Abuse Prevention and Control Act, 21

U.S.C. § 801 et seq., is an unconstitutional regulation of intrastate activity. We have carefully reviewed each of these contentions and for the reasons which follow affirm the conviction.

We begin with a discussion of the search and seizure contention. On January 26, 1972 government agents received a tip that an orange colored 1969 International flatbed truck would enter the United States from Mexico at Laredo, Texas and would be carrying approximately 600 pounds of marijuana in a secret compartment. Two days later, the truck crossed the border exactly as predicted. It was not inspected at that time, but a check of its license plates with the computer monitoring system indicated that it should be placed under surveillance immediately. The truck was discovered some thirty-five minutes later at a Laredo cafe located about four miles from the border. It was kept under constant surveillance for the next six days, a period during which it traveled more than three hundred miles from place to place in south Texas until it was stopped by customs agents in San Antonio. The details of this meandering journey need not detain us. The agents searched the truck without a warrant and found 628 pounds of marijuana in one pound packages wedged into a secret compartment beneath the bed of the truck. Between one and two hours were required to unload the marijuana.

The appellant recognizes that probable cause is not a constitutional requirement for a valid border search and further that the concept of the border is an elastic one which is not susceptible of precise definition. Nonetheless, placing particular emphasis upon the distance from the border at the time of the search (150 miles), the total mileage traveled by the truck (more than 300) and the time elapsed after the border crossing (142 hours), he contends that the search in this case was unconstitutional. He asserts that it took place after the truck's entry into the United States was complete and therefore after the full fourth amendment protections became applicable.[1] He further claims that even if the border search rationale is held applicable, the search still cannot be sustained because of the thirty-five minute break in the surveillance immediately following the border crossing. Alluding to the change of condition doctrine,[2] he apparently suggests that there can be no reasonable certainty that the truck was in fact carrying marijuana when it entered this country.

■■■ We find none of these arguments to be persuasive. Only a brief review of the applicable legal and constitutional principles is essential to our discussion. As this court observed very recently in United States v. Thompson:[3] "Border searches, absent search warrants or probable cause, have been uniformly upheld by the Courts as long as the customs agents have had a reasonable suspicion of violations of the customs laws." Although proximity to the border and the lapse of time since the crossing are proper factors for consideration,[4] no specific temporal or spatial limitations on the authority to conduct a border search have been imposed either

---

1. The appellant derives this conclusion from Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 154, 69 L.Ed. 543, 552 (1925). See also United States v. Warner, 441 F.2d 821, 833 (5th Cir. 1971) ; Thomas v. United States, 372 F.2d 252, 254 (5th Cir. 1967) ; Marsh v. United States, 344 F.2d 317, 325 (5th Cir. 1965).

2. Alexander v. United States, 362 F.2d 379, 382 (9th Cir. 1966) ; King v. United States, 348 F.2d 814, 816 (9th Cir. 1965).

3. 475 F.2d 1359 (5th Cir. 1973). See also United States v. McDaniel, 463 F. 2d 129, 133 (5th Cir. 1972) ; United States v. Valdez, 456 F.2d 1140, 1142 (5th Cir. 1972).

4. United States v. McDaniel, 463 F.2d 129, 132–133 (5th Cir. 1972) ; United States v. Warner, 441 F.2d 821, 832–833 (5th Cir. 1971).

by statute [5] or by judicial decisions.[6] Thus to reiterate, the appropriate constitutional test is a reasonableness standard,[7] which requires a full evaluation of the circumstances leading to the search as a basis for determining its propriety.

■ Examining the facts of this case in light of the preceding principles, we are compelled to hold that the search in this case fell within permissible constitutional limits. An event of twofold significance occurred when the truck crossed the border at Laredo, Texas on January 28, 1972. The first independent corroboration of the informant's tip was provided and for all practical and constitutional purposes a nexus with the border was established which continued thereafter. These facts were entirely sufficient to arouse a reasonable suspicion that the customs laws were being violated. We have no doubt that a warrantless search of the truck could have been conducted at that point under the traditional border search doctrine.

■ Admittedly the search now under constitutional attack was far removed from that context. It took place approximately 150 miles from the border and 142 hours later in time. It is also of some importance to recall that there was a brief 35 minute hiatus just after the border crossing in Laredo during which no surveillance was in effect.

The question which we must decide is whether the intervention of these factors operated to make the traditional border search rationale inapplicable to the search here involved. We think not.

■ As indicated earlier the courts have long recognized that the border is an elastic concept, not susceptible to precise definition in temporal or spatial terms.[8] The wisdom of this salutary legal principle is cogently illustrated by the circumstances of this case. In order to enforce the customs laws, particularly those dealing with the illegal importation of drugs, law enforcement officials must do more than arrest the street level operative; they must, if at all possible, apprehend the ringleaders as well. This objective would not be easily attainable if the authority of customs agents to search was strictly limited to the physical border. By following the truck inland the customs agents obviously hoped to apprehend others involved in the smuggling of a large quantity of marijuana. In view of their purpose we think they used a legitimate law enforcement technique which did not undermine their authority. Moreover, at no time was the crucial nexus with the border broken, nor was there any reason for the agents to doubt their original suspicions. Except for the 35 minute hiatus which we find too brief to have been of any consequence,[9] the truck was

---

5. The statutory basis for border searches by customs agents appears in 19 U.S.C. §§ 482, 1581. Neither section contains any reference to distance limitations on this authority. The search in the instant case is a customs search since the investigating officers had reasonable cause to suspect that there was a violation of the customs laws. A customs search, however, is to be compared with an immigration search, authorization for which can be found in 8 U.S.C. § 1357 and 8 C.F.R. § 287.1. It will be noted that a specific geographic limitation has been placed upon immigration searches. As provided in 8 C.F.R. § 287.1, all searches for the purpose of discovering illegally entered aliens must be conducted within 100 air miles from an external boundary of the United States. See United States v. Thompson, 475 F.2d 1359 (5th Cir.

1973); United States v. McDaniel, 463 F.2d 129, 132 (5th Cir. 1972).

6. See notes 3 and 4 *supra*.

7. This standard in the border search context is less rigorous than the probable cause requirement which normally obtains under the fourth amendment. United States v. Garcia, 452 F.2d 419, 421 (5th Cir. 1971); United States v. Warner, 441 F.2d 821, 832 (5th Cir. 1971).

8. See cases cited notes 3 and 4 *supra*. See also United States v. Glaziou, 402 F.2d 8, 12 (2d Cir. 1968); Marsh v. United States, 344 F.2d 317, 324 (5th Cir. 1965).

9. The record discloses that it took customs agents between one and two hours to unload the entire 628 pound shipment of marijuana. It is highly improbable that the marijuana could have been placed in

kept under constant surveillance. It is significant that during the course of this surveillance the agents' suspicions about the truck's illicit cargo were further heightened when the smell of marijuana was detected emanating from the compartment hidden beneath the floor.[10]

The application of the border search rationale to the search in this case does not offend the fourth amendment. To conclude otherwise would place this court in the untenable position of formulating a per se rule that warrantless searches 150 miles inland and 142 hours after entry into this country cannot be sustained as border searches. The appealing simplicity of such an approach must be resisted. It emphasizes the factors of time and distance to the exclusion of all other factors and thus represents a poor substitute for the reasonableness standard. We hold that the customs agents here had reasonable suspicion to believe that the customs laws were being violated and that the search of the truck was constitutionally permissible under the border search exception to the fourth amendment warrant requirement.[11]

The appellant next contends that certain portions of the testimony of two alleged co-conspirators, Hermelindo Garcia and Benito Solis, were improperly admitted into evidence against him under the co-conspirators exception to the hearsay rule. To fully understand and assess this contention it is necessary to summarize the facts alleged to constitute the conspiracy.

As stated earlier, the 1969 flatbed truck carrying the marijuana crossed the border on January 28, 1972. After being driven to several different locations in south Texas by at least three different drivers, it finally came to rest on the evening of January 31 in Laredo where it was parked at Cabello Brothers Wrecking Yard. Hermelindo Garcia, part of whose testimony is now being challenged, came into the picture on February 2. While drinking in a bar on the Mexican side of the border, he was approached by a man whom he had never seen or met before and was asked if he would drive a truck from Laredo to San Antonio that same day. He told Garcia that the truck would be carrying marijuana and was probably under surveillance. Pay for the driver was to be about a thousand dollars. Garcia declined the offer, but referring to Benito Solis, indicated that he knew someone else who might be interested. The unidentified man agreed to the counter proposal and gave Garcia $180 to $200 in cash to pay Solis' travel expenses plus a piece of paper with the name Richard Pie and a phone number written on it.

the truck's secret compartment after it crossed the border and before surveillance was commenced.

10. Although we do not base our holding that the instant search was valid on the automobile search theory, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), several factors in this case suggest the soundness of such an approach: (1) the tip of a reliable informant that the truck contained marijuana; (2) the odor of marijuana coming from the secret compartment; (3) the presence of the truck on the open highway and the concomitant possibility that the contraband would be lost or destroyed. We have little doubt that a finding of probable cause to search the

truck could be sustained on the record now before us.

11. Customs searches have been upheld under the border search rationale even though conducted a considerable distance from the border. See, e. g., United States v. Reagor, 441 F.2d 252 (5th Cir. 1971) (60 miles); Castillo-Garcia v. United States, 424 F.2d 482 (9th Cir. 1970) (105 miles); United States v. Harris, 427 F. 2d 1368 (9th Cir. 1970) (150 miles; see statement of facts at 400 U.S. 1211, 1212, 91 S.Ct. 4, 27 L.Ed.2d 30, 32); Ramirez v. United States, 263 F.2d 385 (5th Cir. 1959) (75 miles). Cases involving a substantial time lapse are not as common, but this court recently upheld a border search which took place a full week after the defendant entered this country. United States v. Cristancho-Puerto, 475 F.2d 1025 (5th Cir. 1973).

It was understood that a man known as El Coreano would arrange for Solis to pick up the truck at Cabello Brothers in Laredo and also would pay him after he completed the assignment.[12]

Pursuant to this conversation, Garcia contacted Solis and told him the details of the job offer, specifically mentioning the marijuana shipment and the likelihood of surveillance by federal agents. He also gave him the money and the paper with Richard Pie's name and phone number on it. Solis' testimony substantially corroborates Garcia's except that Solis denied any knowledge of the nature of the shipment and the illegality of his activities. He explained that he was asked by Garcia to pick up a load of used lumber in San Antonio.

The remainder of the testimony pertinent to the existence of the conspiracy is largely uncontroverted. After their conversation, Garcia and Solis went to Cabello Brothers where Solis picked up the truck. He drove it to Von Ormy, a town not far from San Antonio. Unsuccessful in his attempts to contact Richard Pie, he decided to leave the truck parked there and hitched a ride back to Laredo arriving at 3:00 a. m. February 3, 1972.

Solis was aroused from his sleep about four hours later by the appellant Martinez. Though he had seen Martinez the day before in a filling station on the road to San Antonio, Solis had never had any previous contact with him. Martinez asked him to get up and drive the truck in to San Antonio as he had originally agreed to do. Solis indicated that he would cooperate and thereupon rode to Von Ormy in a blue Ford along with Martinez and another man whom he also did not know. At Von Ormy Martinez instructed Solis to drive the truck to a Texaco station on the freeway and to wait there until he arrived. Later, when the blue Ford drove up, Martinez's companion instructed Solis to follow their car. He did so until he lost sight of the Ford in a San Antonio residential area. He was arrested shortly after returning to the freeway at which time the search took place.

The challenged portions of Garcia's and Solis' testimony consist principally of references to El Coreano, Richard Pie and the suggestion of some connection between the two. At the outset, we should lay to rest any thought that the admission of this testimony was of no serious consequence to the appellant's defense in this case. In view of the fact that Martinez was known by the nickname of Richard Pie, the damaging character of this testimony should be obvious. It clearly tended to place him in the conspiratorial web.

■ It is not disputed that such hearsay testimony can be admitted in a conspiracy trial. The question which we must decide is whether the proper foundation was laid. Though at times difficult to apply, the controlling rule of law is relatively simple to state: any declaration by one co-conspirator made in furtherance of the conspiracy and during its pendency is admissible against each co-conspirator provided that proof of the existence of a conspiracy is established by independent evidence.[13]

■ In determining whether there is independent evidence of a conspiracy, the trial judge has substantial discretion. He need be satisfied only that the

---

12. In the briefs and at oral argument, both parties stated that it was El Coreano whom Garcia met in the bar on February 2, 1972. We think the record is somewhat unclear on this point. At times Garcia's testimony seems to indicate that the man in the bar was not El Coreano, but perhaps his agent or intermediary. Regardless of which account is correct on this minor factual detail, our conclusion would not be affected.

13. Glasser v. United States, 315 U.S. 60, 74–75, 62 S.Ct. 457, 86 L.Ed. 680, 701 (1942); Lutwak v. United States, 344 U.S. 604, 616–617, 73 S.Ct. 481, 97 L.Ed. 593, 602–603 (1953); United States v. Apollo, 476 F.2d 156 (5th Cir. 1973); United States v. Martinez, 466 F.2d 679, 685 (5th Cir. 1972); United States v. Spanos, 462 F.2d 1012, 1014 (9th Cir. 1972).

evidence is credible and sufficient to support a finding of a joint undertaking.[14] The prosecution unquestionably does not have to establish conspiracy beyond a reasonable doubt.[15] Upon a finding that a conspiracy exists and that the defendant is a participant herein, the trial court can then admit the hearsay declarations of a fellow conspirator against the defendant.[16]

In our judgment the record before this court is replete with evidence tending to support the existence of a conspiracy. Apart from its hearsay aspects, Garcia's testimony plainly reveals that he knew of the illegal aims of the conspiracy and agreed to advance them by recruiting Solis to drive the truck. Though Solis contradicted Garcia on the question of his personal knowledge of the illegal nature of the activities he was to perform, he corroborated Garcia in other respects and, in fact, provided a service that was essential to the ultimate objective of the conspiracy. Solis further provided direct testimony linking the appellant Martinez to this combination as did the surveilling customs agents. Viewing the actions of the trial judge in this light, we are convinced that he did not commit reversible error by permitting the jury to consider the hearsay aspects of the testimony of Garcia and Solis. Our conclusion in this respect would not be altered even if we were to find as a fact that Martinez joined the conspiracy *after* the hearsay declarations in this case were made.[17]

Extensive discussion of the appellant's remaining contentions is not required. In dealing with his hearsay contention, we have reviewed the evidence in some detail. This review, we believe, makes clear that there was sufficient evidence to sustain the appellant's conviction on both counts.[18] Likewise without merit are the appellant's constitutional attacks on the special parole provisions[19] and Title II of the Drug Abuse Prevention Act, 21 U.S.C. § 801 et seq.[20] The judgment of conviction against the appellant is affirmed.

---

14. United States v. Johnson, 467 F.2d 804, 807 (1st Cir. 1972); United States v. Sanders, 463 F.2d 1086, 1088 (8th Cir. 1972); United States v. Bey, 437 F.2d 188, 190 (3d Cir. 1971); United States v. Elliott, 437 F.2d 1253, 1255 (5th Cir. 1971).

15. United States v. Elliott, 437 F.2d 1253, 1255 (5th Cir. 1971).

16. The trial court has the discretion to admit hearsay statements of alleged co-conspirators subject to later proof of the existence of the conspiracy and the defendant's connection with it. United States v. Apollo, 476 F.2d 156 (5th Cir. 1973); United States v. King, 467 F.2d 478, 479 (6th Cir. 1972); Nelson v. United States, 415 F.2d 483, 487 (5th Cir. 1969). This was the procedure followed in the instant case. Before Garcia and Solis were allowed to give any testimony, the trial court instructed the jury in great detail about the restrictions under which they would be able to consider the hearsay testimony against the appellant. The trial court displayed an abundance of caution in protecting the appellant's rights.

17. United States v. United States Gypsum Co., 333 U.S. 364, 393, 68 S.Ct. 525, 92 L.Ed. 746, 765 (1947); United States v. Sarno, 456 F.2d 875, 878 (1st Cir. 1972).

18. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, 704 (1942); United States v. Warner, 441 F.2d 821, 831 (5th Cir. 1971). Once evidence of a conspiracy is shown, only slight additional evidence is required to connect a particular defendant with that conspiracy. United States v. Iacovetti, 466 F.2d 1147, 1154 (5th Cir. 1972); United States v. Morado, 454 F.2d 167, 175 (5th Cir. 1972).

19. United States v. Simpson, 481 F.2d 582 (5th Cir. 1973); United States v. Scales, 464 F.2d 371, 376 (6th Cir. 1972).

20. United States v. Lopez, 459 F.2d 949 (5th Cir. 1972); United States v. Scales, 464 F.2d 371, 375 (6th Cir. 1972).