UNITED STATES of America, Plaintiff-Appellee,

v.

William Chadbourne MITCHELL, Defendant-Appellant.

No. 75–1814.

United States Court of Appeals, Fifth Circuit.

Jan. 16, 1976.
Rehearing En Banc Granted April 15, 1976.

Michael B. Standard, Eric M. Lieberman, New York City, for defendant-appellant.

John E. Clark, U. S. ·Atty., Joel D. Conant, W. Ray Jahn, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GODBOLD, DYER and MORGAN, Circuit Judges.

DYER, Circuit Judge:

Mitchell seeks reversal of his conviction of possessing marijuana with intent to distribute, 21 U.S.C.A. § 841(a)(1). He asserts that his Fourth Amendment rights were violated in the search of a parked pick-up truck which had recently crossed into the United States at the Mexican border and in the seizure of 400 pounds of marijuana. The government argues two bases to justify the government's lack of a search warrant: first, the so-called automobile exception for the exigent circumstances; and second, border search exception. We conclude that the district court erred in denying the appellant's motion to suppress the evidence and reverse.

In June of 1973, agents of the United States Department of Justice's Drug Enforcement Agency (DEA) in New Jersey, were given information by Mancuso, a private individual, concerning a complicated series of transactions in the spring of 1973, in which he had been anonymously hired to drive a car into the United States from Mexico. The cooperating informer presented ample supporting documentation of these initial trips.

DEA agents in New Jersey conferred about these operations with DEA agents in Texas over the course of the summer of 1973. During this period DEA discovered substantial evidence indicating that the apparent travel arrangements were merely a cover for an illegal scheme to import contraband narcotics. In October of 1973, Mancuso was once again surreptitiously propositioned about this Mexican venture in New York City by a phony transportation company. Mancuso told DEA about his instructions to fly to Texas, to cross the border to Mexico, to pick up the same pick-up truck he had driven across empty in April and deliver it to the same San Antonio Holiday Inn he had taken it to on the earlier trip.

On October 13th, a meeting was held by the agents of the Texas DEA with New Jersey DEA and the United States Customs. The DEA agents discussed their belief that narcotics were going to be smuggled into the country in this truck. This trip, like the April one, aborted when Mancuso the next day was told by telephone that the truck was not yet ready, and to return to Mexico and pick up the truck on October 20. He supplied DEA with the truck's description (color, make, license plates, etc.), its designated destination and the time of border crossing. These specifics were the same as they had been in the prior runs in the spring.

On the day of the contested search, the DEA had made extensive preparations for the contemplated drug seizure, both at the border and at the designated arrival site of the truck in Texas. The truck driven by Mancuso, and a red

Buick automobile driven by Mitchell which was following the truck, were kept under continuous surveillance all of the time after they crossed the border at Brownsville, Texas. Meanwhile, a DEA "stake-out" unit had been established as the same Holiday Inn in San Antonio that had previously been designated at the truck's destination. The DEA agents had set up in advance a videotape surveillance unit, and a special "starlight scope" for taping by moonlight.

Mancuso parked the truck in the San Antonio Inn parking lot, seven hours and approximately 300 miles after crossing the Mexican border. When Mitchell appeared, unlocked and attempted to enter the truck, he was arrested by a DEA agent. An initial search of the truck did not turn up any contraband. Dogs were brought in, and their behavior suggested the presence of contraband. A bolt securing the bottom of the truck was removed enough to disclose a sample of what appeared to be marijuana. Subsequently, at police headquarters, 400 pounds of marijuana was removed.

The government, relying on *Chambers v. Maroney*, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, argues that the search is valid under the automobile search exception to the warrant requirement. Mitchell responds that the search cannot be justified because there were no exigent circumstances. Since this was a planned search, he contends there was adequate opportunity to obtain a warrant well in advance of the seizure of the truck.

We fully recognize the general principle of probable cause coupled with exigent circumstances urged by the government to justify its proceeding without a warrant. That there was probable cause to arrest Mitchell and to search the vehicle at the time he attempted to enter it cannot be disputed. But, the government has been unable to demonstrate any exigent circumstances. Its claim, that the evidence might evaporate, is unsubstantiated in the record. To the contrary the government had planned and prepared for the expected search at the designated site with unusually extensive personnel and equipment. There was literally no risk of loss of the contraband, nor loss of sight of the vehicle enroute, as it was at all times under the control of Mancuso, the cooperating informer. The only circumstances suggesting unpredictability were the facts unknown to Mancuso. He did not know the identity of the principals involved, nor that the trip in question would not be aborted as had previously occurred. In the distinctive factual context of this case we regard these uncertainties as of minimal significance. The notion of unpredictability here is simply outweighed by the extraordinary specificity of the government's advance knowledge and planning of the search over such a prolonged time period.

Essentially, the government's contention is the existence of *per se* exigency for a warrantless search whenever an automobile is involved, regardless of the attendant circumstances. To uphold this search under the automobile exception would entail a radical expansion of that theory's scope contrary to the underlying rationale for allowing the original deviation from the constitutional rule. *Carroll v. United States*, 1925, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543. In the absence of the compelling facts of exigency, reason for the exception fails. As the Supreme Court has reiterated, "The rationale of *Chambers* is that *given* a justified initial intrusion, there is little difference between a search on the open highway and a later search at the station. Here, we deal with the prior question of *whether* the initial intrusion is justified." *Coolidge v. New Hampshire*, 1971, 403 U.S. 443, 463 n. 20, 91 S.Ct. 2022, 2036, 29 L.Ed.2d 564. *See* also *Cardwell v. Lewis*, 1974, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325.

In *Chambers*, a warrantless search of a car securely held in government custody was nevertheless reasonable only because the *initial* seizure had been proper due to exigent circumstances. *Chambers, supra*, 399 U.S. at 51–52, 90 S.Ct. 1975. *See* Note, Warrantless

Searches and Seizures of Automobile, 87 Harv.L.Rev. 835, 843–844 (1974); Miles and Wefing, The Automobile Search and the Fourth Amendment—A Troubled Relationship, 4 Seton Hall L.Rev. 105, 130–132 (1972). The vehicle's potential instant mobility has always been the crucial factor rendering the prior procurement of a search warrant impractical. Thus effective law enforcement requires immediate action because "the opportunity [for the] search is fleeting." *Chambers, supra* at 51, 90 S.Ct. at 1981. But there is no *per se* exemption from the warrant requirement for automobiles. "The word 'automobile' is not a talismen in whose presence the Fourth Amendment fades away and disappears." *Coolidge, supra,* 403 U.S. at 461–62, 91 S.Ct. at 2035.

■ In the instant case the exigency factor is missing. There were no time constraints. On the contrary it was entirely practicable for DEA to procure a search warrant. Probable cause to suspect contraband was present. The entire operation from beginning to end was intimately surveilled. The government knew when and where the car was to arrive; and, once it arrived in the motel parking lot, it was surrounded by no less than ten surveilling agents. There was no question of mobility. We deal here with a *planned* warrantless seizure, see *Coolidge, supra,* at 471 n. 27, 91 S.Ct. 2022, without any unforeseeable or actually unforeseen circumstances.

■ The second theory advanced by the government is that there was a customs search by Customs agents having broad statutory authority to conduct border searches without either a search warrant or even probable cause. 19 U.S. C.A. § 482. *United States v. Martinez,* 5 Cir. 1973, 481 F.2d 214. Since there are no specific temporal or spatial limitations on this search authority the government submits that the search is a reasonable exercise of its customs au-

thority. Mitchell's response is that this was not a functional equivalent of a border search, nor was it a customs search because it was not conducted by customs agents; the agents were simply passive observers, present for the purpose of vicariously conferring their statutory search authority upon DEA.

We need not reach the issue of whether, and under what circumstances, an otherwise reasonable border search could be invalidated on the basis of the pretextual presence of customs agents in a search operation clearly run by other governmental officials. *See United States v. Thompson,* 5 Cir. 1973, 475 F.2d 1359, 1361–63. We assume that this search was carried out under the customs authority, yet even this broad authority is subject to constitutional delimitations.

The government relies on *United States v. Martinez, supra,* in which we upheld as constitutionally permissible a search 150 miles from the border (after more than 300 miles of actual driving) and 142 hours later in time. But we made it clear in *Martinez* that the proper constitutional approach to determining the validity of the search is the "reasonableness standard, which requires a full evaluation of the circumstances leading to the search as a basis for determining its propriety." We utilized this "reasonableness standard," rather than the "appealing simplicity" of the bare "factors of time and distance to the exclusion of all other factors." *Id.* at 218, 219.

In applying the *Martinez* standard to the facts of the instant case, we again emphasize that we do not adopt a *per se* formula defining the outside numerical functional equivalents of the border. That the scope of the border is "an elastic concept, not susceptible to precise definition in temporal or spatial terms," *Martinez, supra,* at 218, is simply a recognition of the infinite possibilities for varying patterns of factual circumstances.[1]

---

1. See for example the geographical range in cases where we have upheld customs searches conducted at distances, up to 150 miles, from the border, collected in *Martinez, supra,* at

219, n. 11. But it is significant for our analysis of the instant case that in all of those cases the destination of the vehicle was unknown.

But, here the complete, detailed, and reliable knowledge of the itinerary and destination of the vehicle, the control of the vehicle by the cooperating informer, and the thorough surveillance and general preparedness of the government at the planned search site, taken together with the time and distance, destroy the underlying criteria for a proper border · search. In *Martinez*, the course of the vehicle's journeying and its eventual destination were unforeseeable. All of the time that that vehicle was being driven on the highways there was a continuous possibility that the suspected contraband would be lost or destroyed. There was no such possibility in the instant case, nor was any significant aspect of the vehicle's journeys either unforeseeable or unforeseen.

The border search exception to the warrant requirement is grounded upon finding a pressing governmental need for acting without a warrant. The courts have consistently treated the border search exception as based on the necessity for "national self protection" in protecting the country from smuggling of contraband. *Carroll, supra*, 267 U.S. at 154, 45 S.Ct. 280. *Thomas v. United States*, 5 Cir. 1976, 372 F.2d 252, 254. This rationale of a practical imperative mandating immediate action justifies the notion of an extended border search.

The national interest in apprehending smugglers and their contraband makes such a conceptual elasticity constitutionally acceptable. *Martinez, supra,* and other cases finding searches reasonable "even though conducted a considerable distance from the border," all differ from the instant case in this vital regard, in those cases, the court's approval of the extended search was carefully tied to the needs of effective law enforcement presented in the specific facts. *Martinez, supra,* at 219, n. 11. Here, the furtherance of the national interest did not require that immediate, on-the-spot action affording no opportunity for procuring a warrant. "[T]he *Carroll* doctrine does not declare a field day for the police in searching automobiles." *Almeida-Sanchez v. United States,* 1973, 413 U.S. 266, 269, 93 S.Ct. 2535, 2537, 37 L.Ed.2d 596. *See* Note, Border Searches and the Fourth Amendment, 77 Yale L.J. 1007, 1011–14 (1968).

Reversed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before BROWN, Chief Judge, WISDOM, GEWIN, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, MORGAN, CLARK, RONEY, GEE and TJOFLAT, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc.

IT IS ORDERED that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk shall specify a briefing schedule for the filing of supplemental briefs.