UNITED STATES of America, Appellee,

v.

George H. FARNKOFF, Jr.,
Defendant-Appellant.

No. 74–1437.

United States Court of Appeals,
First Circuit.

Argued Jan. 5, 1976.

Decided May 12, 1976.

Albert H. Russell, Jr., Waltham, Mass., with whom Alfred Paul Farese, Farese, Farese & Chambers, Everett, Mass., was on brief, for defendant-appellant.

Paul E. Troy, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Appellant was indicted on one count charging him with possession of property valued over $100 stolen from an interstate shipment, in violation of 18 U.S.C. § 659.[1] He was found guilty after a jury trial, and this appeal followed. He assigns as error the following actions of the trial court: (1) the denial on procedural grounds of a motion to suppress; (2) the denial (on the merits) of a separate motion to suppress; (3) the failure to grant his motion for judgment of acquittal; (4) an allegedly improper instruction on the recent theft doctrine; and (5) the failure to declare a mistrial because of allegedly improper prosecutorial remarks. We discuss each of these contentions in order.

### I. The Untimely Motion to Suppress

In the course of the trial, appellant moved to suppress all the evidence obtained

---

1. The stolen property at issue in this case was a quantity of Canadian Club whisky which was "hijacked" on July 3, 1973, while being transported by truck on Interstate Route 93 from Allston to Lawrence, Massachusetts. (The shipment had originated in Canada, where the whisky is produced.) Further details about the theft and appellant's alleged involvement will be discussed below as they become relevant to the particular issues on appeal.

from a warehouse at 143 Addison Street[2] in East Boston.[3] The evidence was obtained pursuant to a search warrant, and it was the adequacy of that warrant which appellant questioned in his motion to suppress.[4] The district court denied this motion on the ground that it was not filed prior to trial. Appellant argues, on the basis of a literal reading of the Federal Rules of Criminal Procedure in force at the time of his trial (November 1974), that he was not required to file such a motion prior to trial.

In order to evaluate this argument properly, we must briefly summarize the history of the relevant Rules while bearing in mind "[t]he inevitably uneven pace at which amendments to the . . . Rules . . . must be adopted." *United States v. Mauro*, 507 F.2d 802, 803 (2d Cir. 1974) (Kaufman, C. J.), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1426, 43 L.Ed.2d 672 (1975).[5]

Before it was amended in 1972, Rule 41(e) read:

"A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for the use as evidence anything so obtained . . . . .
The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion

may entertain the motion at the trial or hearing."

This mandatory language ("shall be made") was consistent with prior practice. *See, e. g., Nardone v. United States*, 308 U.S. 338, 341–42, 60 S.Ct. 266, 267–68, 84 L.Ed. 307, 311–12 (1939); *United States v. Di Re*, 159 F.2d 818, 820 (2d Cir. 1947) (dictum), *aff'd*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). *See also Jones v. United States*, 362 U.S. 257, 264, 80 S.Ct. 725, 732, 4 L.Ed.2d 697, 704 (1960); *United States v. Mauro, supra* at 805–06. The policy underlying this practice has been clearly expressed by the Supreme Court.

"[E]xcept where there has been no opportunity to present the matter in advance of trial, . . . a court, when engaged in trying a criminal case, will not . . permit a collateral issue to be raised as to the source of competent evidence. To pursue it would be to halt in the orderly progress of a cause and consider incidentally a question which has happened to cross the path of such litigation and which is wholly independent of it." *Segurola v. United States*, 275 U.S. 106, 111–112, 48 S.Ct. 77, 79, 72 L.Ed. 186, 189 (1927) (citations omitted).

■ By the 1972 amendments, Rule 41(e) became Rule 41(f) and read as follows:

"A motion to suppress evidence may be made in the court of the district of trial as provided in Rule 12."[6]

It is this version of the Rule which was in force at the time of the trial.[7] Appellant

---

2. The Addison Street structure is characterized in the record alternatively as a "garage" and as a "warehouse," but these discrepancies have no bearing on the legal issues involved.

3. The evidence in question consisted, in part, of quantities of Canadian Club, which the government contended were part of the stolen shipment.

4. Specifically, he argued that the affidavit on the basis of which the warrant was issued did not contain probable cause.

5. The *Mauro* case represents a scholarly discussion of the issue before us, one that has rarely been passed on by the courts. *See also*

*United States v. Rollins*, 522 F.2d 160, 165 (2d Cir. 1975); 8A J. Moore, Federal Practice ¶ 41.-08, at 4196 (1975 revision).

6. At the time of the trial, Rule 12(b)(2) read in pertinent part: "Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial."

7. The Rules have subsequently been further amended, and those changes became effective on December 1, 1975. *See* n. 9 *infra*.

emphasizes the absence of an explicit pre-trial requirement in this Rule and in Rule 12, and on that basis he claims that he was not barred from presenting his motion at trial. There is, however, no indication either in the text of the Rules or in the Notes of the Advisory Committee [8] of an intention to overrule the longstanding and salutary requirement of pre-trial filing of such motions. We will not lightly assume that such an overruling was intended to be effected *sub silentio.* "[U]nless the statute so requires with crystal clarity, it should not be so applied as to negative broad principles well settled in our law by a long series of decisions." *Scarborough v. Atlantic Coast Line R. R. Co.,* 178 F.2d 253, 258 (4th Cir. 1949), *cert. denied,* 339 U.S. 919, 70 S.Ct. 621, 94 L.Ed. 1343 (1950). In addition, we note that those courts which have had occasion to pass on the subject have all held that even under the 1972 version of the Rules pre-trial filing was required. *United States v. Rollins,* 522 F.2d 160, 165 (2d Cir. 1975); *United States v. Mauro, supra*; [9] *United States v. Sisca,* 503 F.2d 1337, 1349 (2d Cir.), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974); *United States v. Barber,* 495 F.2d 327, 329 (9th Cir. 1974) *(semble ).* On the basis of all these considerations, we hold that the district court was correct in viewing pre-trial filing as mandatory, in its discretion, rather than optional.[10]

■ Of course the district court could have admitted the untimely motion to suppress, but its decision not to do so is reviewable by us "[o]nly in a case of the most flagrant abuse of a defendant's rights." *United States v. Maloney,* 402 F.2d 448, 449 (1st Cir. 1968), *cert. denied,* 394 U.S. 947, 89 S.Ct. 1283, 22 L.Ed.2d 481 (1969). *See also United States v. Wylie,* 149 U.S.App.D.C. 283, 462 F.2d 1178, 1182 (1972); *Bailey v. United States,* 131 U.S.App.D.C. 314, 404 F.2d 1291, 1292 (1968); 8A J. Moore, *supra* at ¶ 41.09. Our independent examination of the record and especially of the questioned affidavit convinces us, however, that no such flagrant abuse occurred in the instant case.

II. *The Evidence From the Car*

Appellant was also unsuccessful on a separate motion to suppress involving other evidence; this time the court's decision was based on the merits rather than procedural grounds. The evidence in question consisted of several cases of whisky removed by federal agents from the trunk of a car registered to appellant that was parked in front of the Addison Street address.

The warrant which the agents had obtained to search the building at 143 Addison Street did not by its terms apply to any vehicle parked on the street outside of that building. At approximately 11 p.m. on July 3, when the agents had completed their

---

**8.** The Advisory Committee's Notes do not focus on the time of filing, but on the place: "Subdivision (f) is new and reflects the position that it is best to have the motion to suppress made in the court of the district of trial rather than in the court of the district in which the seizure occurred. . . ."

**9.** The Second Circuit in *Mauro, supra* at 807, attributes the absence of a time requirement in the 1972 version of the Rules to the fact that it was originally intended that the 1972 amendments to Rule 41 would be accompanied by amendments to Rule 12 which would, in so many words, retain the pre-trial requirement; for some reason, amended Rule 12 was not transmitted to Congress along with amended Rule 41, and thus the present confusion arose. (The present text of Rule 12—transmitted to the Congress in April of 1974 and effective on December 1, 1975—is explicit as to the require-

ment of pre-trial filing.) While this exegesis of the problem seems quite logical, we do not expressly adopt it, preferring to rest our decision on more general principles of statutory construction.

**10.** There is no indication in the record or in the briefs on appeal of any detrimental reliance by appellant on the interpretation of the Rules which he now urges. *See United States v. Mauro, supra* at 807.

We also believe that the traditional exceptions—for situations where there was no opportunity for pre-trial hearing or where the defendant was not aware of the grounds for the motion prior to trial—would also have continued to be available as in prior practice, but those exceptions would not apply to appellant's case.

search of the building, they decided to look at appellant's car. The trunk of the car had been damaged at some previous time, creating a small aperture. With the aid of a flashlight one of the agents observed the cases of whisky in the trunk. He and his fellow agents then removed the whisky from the car; it was later entered in evidence at the trial as being from the stolen shipment. The question before us is whether the warrantless search of appellant's car was justified.

In the light of recent decisions of the Supreme Court, we believe the warrantless search was proper in the circumstances of this case. It is true that "there is no *per se* exemption from the warrant requirement for automobiles." *United States v. Mitchell*, 525 F.2d 1275, 1278 (5th Cir. 1976). Instead, we must undertake a two-step inquiry, asking whether there was probable cause for the search and whether there were present sufficiently exigent circumstances to justify the agents' decision not to seek a warrant. *Cardwell v. Lewis*, 417 U.S. 583, 592, 595–96, 94 S.Ct. 2464, 2470, 2471–72, 41 L.Ed.2d 325, 336, 337–38 (1974). (plurality opinion).

There can be little question but that the agents had probable cause to search the vehicle. Above all, they had just discovered

214 cases of Canadian Club in the warehouse, which they reasonably could have presumed were from the stolen shipment, and they knew that there were approximately 800 cases still unrecovered. They also were aware that the car was appellant's, and that he had previously refused to answer when they had knocked on the warehouse door. Thus, quite apart from what the flashlight's beam revealed to be contained in the trunk,[11] the agents had probable cause to search the car.

We must determine whether there were present sufficient "exigent circumstances" as that term of art has been defined by the Supreme Court. *Cardwell v. Lewis, supra; Coolidge v. New Hampshire, supra; Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). As the Court itself has observed, speaking of the troublesome area of automobile searches generally: "The decisions of the Court over the years point in differing directions and differ in emphasis. No trick of logic will make them all perfectly consistent." *Coolidge v. New Hampshire, supra*, 403 U.S. at 483, 91 S.Ct. at 2047, 29 L.Ed.2d at 593. The accuracy of this observation becomes apparent when one looks to the case law dealing with the exigency requirement.[12] But under any

11. Because we uphold the search here on the basis of the so-called "automobile exception," we need not decide whether the "plain view" exception, *Coolidge v. New Hampshire*, 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971); *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069 (1968), could also be invoked here where the incriminating evidence came into view after pointed scrutiny with the aid of a flashlight. Several well-reasoned decisions have suggested that the use of artificial illumination does not alone necessarily preclude application of the plain view rule. *See, e. g., United States v. Lara*, 517 F.2d 209, 211 (5th Cir. 1975); *United States v. Johnson*, 506 F.2d 674, 676 (8th Cir. 1974), *cert. denied*, 421 U.S. 917, 95 S.Ct. 1579, 43 L.Ed.2d 784 (1975); *United States v. Lewis*, 504 F.2d 92, 101 (6th Cir. 1974), *cert. denied*, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975); *United States v. Hood*, 493 F.2d 677, 680 (9th Cir.), *cert. denied*, 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 84 (1974); *United States v. Hanahan*, 442 F.2d 649, 654

(7th Cir. 1971); *Marshall v. United States*, 422 F.2d 185, 188–89 (5th Cir. 1970). *See also United States v. Lee*, 274 U.S. 559, 563, 47 S.Ct. 746, 748, 71 L.Ed. 1202, 1204 (1927) (Brandeis, J.).

12. We noted in our recent decision in *Haefeli v. Chernoff*, 526 F.2d 1314, 1318 n. 9 (1st Cir., 1975), that the Supreme Court in *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209, 44 U.S.L.W. 3327 (1975) did not discuss the issue of exigency even though the state court had emphasized the absence of exigent circumstances. Nevertheless we are reluctant to impute to the Supreme Court an intention to overrule *sub silentio* the requirement of exigency. "We assume that if a Supreme Court majority intends to institute such a rule, and to depart from its prior approach, it will do so by express pronouncement to all concerned." *United States v. Robinson*, 533 F.2d 578, 18 Crim.L.Rep. 2534 (D.C.Cir., 1976). *But see id.* at 586, 18 Crim.L.Rep. at 2535 (concurring opinion of Robb, Tamm, and Wilkey, JJ.). *See*

reasonable reading of the Court's most recent extensive discussion of the subject, *Cardwell v. Lewis, supra,* the agents here were confronted with exigent circumstances. It was late at night on the eve of the Fourth of July; the car was parked on a public street and could readily have been removed by appellant (who was still at large) or someone acting for him; there is no indication that the agents knew when they obtained the warrant for the building that they would later want to search the car as well.[13] Given this factual context, we agree with the district court that the exigency requirement was satisfied. *See United States v. Robinson,* 533 F.2d 578, 18 Crim.L.Rep. 2534 (D.C.Cir. 1976); *United States v. McClain,* 531 F.2d 431 (9th Cir. 1976); *Haefeli v. Chernoff,* 526 F.2d 1314 (1st Cir. 1975).

### III. *Sufficiency of Proof that the Property Entered as Evidence was Stolen*

■ Appellant contends that the court erred in not granting his motion for a judgment of acquittal because there was insufficient evidence that the liquor recovered from the warehouse leased by him and from his car had in fact been "embezzled, stolen, and unlawfully taken and carried away," as charged in the indictment. Specifically, he argues that the fact that the warehouse contained quantities of Canadian Club bearing some of the same lot numbers as the cases in the hijacked truck does not constitute proof beyond a reasonable doubt that the whisky in his possession was stolen.[14] He states that it is conceivable that the whisky found in his possession could have

come from non-stolen portions of the various lots. (He notes, for example, that at about the time of the theft at issue here the same manufacturer made three other shipments, all from lot number 1773, to Waltham, Massachusetts and that therefore it is not inconceivable that these other shipments were the source of the lot number 1773 whisky found in the East Boston warehouse.)

Our criterion in reviewing the denial of a motion for judgment of acquittal is "whether a rational juror . . . drawing reasonable inferences . . . from the evidence viewed in the light most favorable to the government . . . could have found guilt beyond a reasonable doubt." *Villarreal Corro v. United States,* 516 F.2d 137, 140 (1st Cir. 1975) (citations omitted). Applying this standard and evaluating all the evidence—including the correlation between the lot numbers of the stolen liquor and of the liquor found in the warehouse; the fact that the warehouse did not contain a quantity of any lot number in excess of that which the hijacked truck had contained; the fact that there were no other major thefts of Canadian Club during June or July of 1973; and the failure of the individuals inside the building to respond to the FBI's knock at the door—we are persuaded that the court properly denied the motion.

### IV. *The Instruction on Recent Theft*

■ Appellant next objects to the court's instruction concerning the "recent theft" doctrine.[15] The gravamen of his complaint

---

also *United States v. McClain,* 531 F.2d 431 (9th Cir., 1976) (a post-*White* decision still recognizing the exigency requirement).

**13.** Because of this last factor the Fifth Circuit's recent decision in *United States v. Mitchell,* 525 F.2d 1275 (1976) is distinguishable. The court in *Mitchell* stressed that it was faced with "a *planned* warrantless seizure . . . without any unforeseeable or actual unforeseen circumstances." *Id.* at 1278 (emphasis in original). In *Mitchell* suppression was required because the warrantless search had occurred in the face of "the extraordinary specificity of the government's advance knowledge and planning of the

search over . . . a prolonged time period." *Id.* at 1277.

**14.** The truck carried 176 cases from lot number 1773, 440 cases from lot number 1734, 210 cases from lot number 1730, 60 cases from lot number 1290, 49 cases from lot number 1764, and 80 cases from lot number 1700. In the warehouse leased by appellant quantities of Canadian Club from the following lot numbers were found: 1773, 1730, 1764 and 1700.

**15.** The court's instruction read, in illustrative part:

"Possession of property recently stolen, if not satisfactorily explained, is ordinarily a

here is not entirely clear; he apparently contends that the court should have told the jury more clearly that mere possession of recently stolen goods is not enough, but that additional circumstances indicating guilty knowledge must be shown. In support of this argument, appellant relies principally on *Torres v. United States*, 270 F.2d 252, 258–59 (9th Cir. 1959), *cert. denied*, 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed.2d 741 (1960), in which the court stated that further incriminating circumstances in addition to mere possession must be shown before the recent theft doctrine could be applied.

We need not decide whether the principles enunciated in *Torres* should be applied in this circuit.[16] In the instant case there were enough incriminating circumstances in addition to appellant's constructive possession of the goods in the warehouse leased by him to satisfy even the *Torres* standard: some of the whisky in the warehouse was inside a stolen truck; appellant's fingerprints were on both the stolen truck and a forklift in the warehouse; and appellant failed to answer the FBI's knock at the warehouse door, and some of his companions had earlier fled the scene. Finally, we note that the liquor had been hijacked not several days earlier, but that very morning.

### V.  *The Prosecutor's Remarks*

Appellant's final contention is that, in his closing argument to the jury, the prosecutor made comments which were so prejudicial as to require a mistrial. Two separate prosecutorial remarks are cited as highly prejudicial; the first is as follows:

> "[Y]ou have a right to say to yourselves, is evidence being presented to us to help us find the truth or are we having monkey wrenches thrown into things to confuse us? Because run down the elements and we'll say, my God, does the defendant deny everything?"

Appellant views this statement as implying that it is rare for a defendant to "deny everything" and that it dilutes the fifth amendment privilege against self-incrimination by suggesting that assertion of the privilege is something untoward or unusual; and the statement is reasonably susceptible of such an interpretation.

It is elementary that a defendant may put in issue all elements of the charge against him leaving on the government the burden of proving each element beyond a reasonable doubt. To the extent that the quoted prosecutorial remark implied to the jury that such a defense posture was un-

circumstance from which the jury may reasonably draw the inference and find in the light of surrounding circumstances shown by the evidence in the case that the person in possession knew the property had been stolen. The term recently is a relative term, and has no fixed meaning. The longer the period of time since the theft, the more doubtful becomes the inference which may reasonably be drawn from the unexplained possession.

"If the jury should find beyond a reasonable doubt from the evidence in the case that this Canadian Club whisky described in the indictment was stolen and that while recently stolen the property was in the possession of the defendant, the jury would ordinarily be justified in drawing from those facts the inference that the whisky was possessed by the accused with knowledge that it had been stolen, unless possession of the recently stolen property by the accused is explained to the satisfaction of the jury by other facts and circumstances in evidence in the case."

We would observe that the first sentence in the quoted portion of the instruction seems to incorporate the standard established in *Torres v. United States*, 270 F.2d 252, 258–59 (9th Cir. 1959), *cert. denied*, 362 U.S. 921, 80 S.Ct. 675, 4 L.Ed.2d 741 (1960).

16. *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), in which the Supreme Court discussed the recent theft doctrine at length, contains no reference to the *Torres* rule or to an equivalent thereof. *But see United States v. Jones*, 418 F.2d 818, 823 (8th Cir. 1969). On the recent theft doctrine generally, *see Pendergrast v. United States*, 135 U.S.App.D.C. 20, 416 F.2d 776, 786–88, *cert. denied*, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969); *Dinkins v. State*, Md.App., 349 A.2d 676 (1976). *See also Wilson v. United States*, 162 U.S. 613, 619, 16 S.Ct. 895, 898, 40 L.Ed. 1090, 1094 (1896).

usual and in any way constituted a comment on the assertion of the fifth amendment privilege, it is to be unequivocably condemned. Nevertheless, we do not find that this particular prosecutorial indiscretion was so inherently prejudicial or improper that, even given a curative instruction, reversal must result. An adequate curative instruction was in fact promptly given (and was repeated in the charge). In the circumstances we hold that appellant was not denied his right to a fair trial. See *United States v. Flannery*, 451 F.2d 880, 882 (1st Cir. 1971); *Desmond v. United States*, 345 F.2d 225, 226–27 (1st Cir. 1965). *Cf. Rodriguez-Sandoval v. United States*, 409 F.2d 529, 531 (1st Cir. 1969). *See also United States v. Ward*, 481 F.2d 185, 187–88 (5th Cir. 1973); *Goitia v. United States*, 409 F.2d 524, 528 (1st Cir. 1969), *cert. denied*, 397 U.S. 906, 90 S.Ct. 896, 25 L.Ed.2d 86 (1970); *State v. Sherman*, 113 R.I. 77, 317 A.2d 445 (1974).

■■■■■ Appellant also objects to the following remark made by the prosecutor during his closing argument to the jury: ". . . I suggest to you, I ask you to consider these things, come to the decision which I think you should come to, based upon the evidence, that the defendant is guilty as charged." He correctly points out that it is improper for a prosecutor to inject his personal opinion about a defendant's guilt into his argument before the jury. *DeChristoforo v. Donnelly*, 473 F.2d 1236, 1238 & n. 3 (1st Cir. 1973), *rev'd on other grounds*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *United States v. Cotter*, 425 F.2d 450, 453 (1st Cir. 1970); *Greenberg v. United States*, 280 F.2d 472, 474–75 (1st Cir. 1960). It should be noted that the prosecutor's statement did at least make

clear that he thought the jury should arrive at a guilty verdict "based upon the evidence;" he did not imply that he had formed his opinion on the basis of facts not in evidence. While this fact may tend to mitigate the effect of the prosecutor's indiscrete statement, it does not excuse it. "[W]e have long put ourselves on record as disagreeing with those circuits which permit the prosecutor to add the weight of his own—or the government's—thumb to the scales of justice quite apart from any . . . connotation or implication of knowledge of additional facts." *United States v. Cotter*, *supra* at 453.

■■■■■ Once again, however, the trial court promptly gave a clear and accurate curative instruction. While we would emphasize our disapproval of errors of this nature on the part of the prosecutor,[17] we cannot say on the basis of the facts before us that the prejudicial effect of this statement was such that, a proper curative instruction having been given, appellant was deprived of his right to a fair trial. *See Patriarca v. United States*, 402 F.2d 314, 322, n. 7 (1st Cir. 1968), *cert. denied*, 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969).

*Affirmed.*

---

17. Our patience with such prosecutorial indiscretions is not limitless and may result in reversal if they should continue to occur. *See United States v. Williams*, 496 F.2d 378, 384 & n. 7 (1st Cir. 1974).

We would stress that:

"A United States Attorney in a criminal case has an even greater responsibility than counsel for an individual client. For the purpose of the individual case he represents the great authority of the United States and he must exercise that responsibility with the circumspection and dignity the occasion calls for." *United States v. Kravitz*, 281 F.2d 581 (3d Cir. 1960), *cert. denied*, 364 U.S. 941, 81 S.Ct. 459, 5 L.Ed.2d 372 (1961).